DEPOSIT GUARANTY BANK & TRUST Co. *et al. v.* LUKE *et al.*

(Division A. Nov. 4, 1935. Suggestion of Error Overruled Jan. 6, 1936.)

[164 So. 30. No. 31672.]

Eugene Palmer, Shaw & Pilgrim and Barron C. Rick-etts, all of Jackson, for appellant, Deposit Guaranty Bank & Trust Company.

100

Butler & Snow, of Jackson, for appellant, Deposit Guaranty Bank & Trust Company.

Chambers & Trenholm, of Jackson, for appellant, J. I. Magee.

104

J. Morgan Stevens, Harry M. Bryan and J. M. Stevens, Jr., all of Jackson, for appellees.

Argued orally by **E. L. Trenholm** and **Geo. H. Butler**, for appellant, and by **Harry M. Bryan** and **J. Morgan Stevens**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

E. B. Luke and twenty others, resident citizens of Oklahoma and Texas, nonresidents of this state, exhibited their bill in the chancery court of Hinds county against the Deposit Guaranty Bank & Trust Company and J. I. Magee, seeking to recover money paid by each of them to the Deposit Guaranty Bank & Trust Company, hereinafter called the bank, and allowed by it to be withdrawn and applied to the personal account of J. I. Magee. The bill charged that Magee, as a promoter, sold them syndicate certificates which were in fact stock certificates, and that complainants had deposited their money with the bank upon the strength of a letter written to Magee by G. L. Donald, president of the bank, agreeing to hold their money under the rules and regulations promulgated by the secretary of state under the authority of the securities law of Mississippi; and that Magee, as agent, had falsely represented to them that no greater amount of money would be expended in the organization of the proposed corporation than was allowed by the law of

this state. In short, the bill charged violation of an express trust by the bank and Magee. Attached to the bill as exhibits were a letter from the secretary of state to J. I. Magee, Founders' Syndicate; a letter to Magee, care National City Finance Company, from G. L. Donald, president of the bank; rulings and instructions of the secretary of state on the securities law of Mississippi; subscribers' agreement with Founders' Syndicate, and copy of Founders' certificate.

Magee and the bank answered, denying the material allegations of the bill, and the charge of bad faith on their part. The bank filed with its answer, as an exhibit, the letter of Magee to G. L. Donald, president of the bank, to which Donald's letter was a reply; and it is necessary to a clear understanding of the matter that the two letters be read together.

Both Magee and the bank filed demurrers with their answers, which demurrers were heard by the court, and overruled, and the cause referred to a master. After taking the evidence, the master filed an elaborate report, finding Magee liable for the several amounts paid by the complainants, and holding that the bank did not act as a trustee, and therefore was not liable to complainants. Numerous exceptions filed to the report of the master were overruled by him, and thereupon the chancery court entered its decree against the bank and Magee for the full amount paid by the complainants, with interest from the dates of the several deposits in the bank. Magee did not file exceptions to the master's report, but with the bank prosecutes an appeal to this court.

Prior to January 7, 1931, Magee, who by the record is shown to be an expert promoter, conceived the idea of organizing the National Finance Company as a Delaware corporation, and to facilitate this he undertook to create the Founders' Syndicate as a pool, selling certificates therein of the par value of one hundred dollars each to members.

On January 7, 1931, Magee wrote and delivered to the president of the bank the following letter:

"By hand.

"Founders Syndicate
for the
National City Finance Company, Inc., of Delaware.

"Jackson, Miss., Jan. 7th, 1931.

"J. Irving Magee, Syndicate Manager.

"Maj. G. L. Donald, President Deposit Guaranty Bank, Jackson, Miss.

"Dear sir: It is our desire to open an account with some of the banks here to act as depository for the funds accruing from sale of stock of the above corporation in process of organization, in accordance with statutes governing. This same connection to serve in same capacity for the Founders' Syndicate, through which the proposed finance company will be created, and the arrangement as above will of course apply only to fund accruing from sale of stock of the proposed Finance company.

"Funds deposited accruing from sale of Syndicate memberships are to be subject to check for defraying of expense of organization, funds accruing from stock subscription sales will of course be dormant until released by the Secretary of State.

"We offer you this account, and ask that you place with us a letter of acknowledgment, in acceptance of this, along with signature card.

"Yours very truly,

"J. I. Magee, Syndicate Manager."

On January 9, 1931, G. L. Donald, president of the bank, replied to Magee's letter as follows:

"Deposit Guaranty Bank & Trust Co., Jackson, Mississippi, Jan. 8th, 1931.

"Mr. J. I. Magee, Care National City Finance Co., Inc., Jackson, Miss.

"Dear sir: Reference is made to your letter of January 7th, in which you ask if this bank will act as depository

for the funds accruing from sale of stock in the National City Finance Co., Inc.

"We will do this under the provision laid down in the rules and instructions of the Secretary of State on the 'Securities Law' of Mississippi, a copy of which, bearing our signature is hereto attached.

"Yours truly

"[Signed] G. L. Donald, President."

Attached thereto was a copy of the rules of the secretary of state on the securities law, signed by G. L. Donald as president of the bank, the material part of same being as follows: That all funds derived from sale of securities in this state should be deposited in a bank in this state; that no part of the funds so deposited should be expended except to pay commissions on sales of securities, until the amount specified in the permit had been reached; and the funds were to be released by an order from the secretary of state. It was required that the subscription blanks should show on their faces the full amount of commission and other expenses incident to the sale of securities, which should not exceed twenty per cent., exclusive of charter fees, attorneys' fees, franchise tax, stamps and stationery, etc.

Magee, through an agent selected by him, then proceeded to sell syndicate certificates in Texas and Oklahoma, the agent procuring the purchasers to sign subscription agreements addressed to him for units in said syndicate, by which the holder of the syndicate unit was entitled to exchange it for shares, one syndicate unit for ten shares of stock in the proposed corporation, in class B of common stock of the National City Finance Company when organized by the subscriber paying ten cents for each share in the corporation. In addition, the purchaser of each syndicate unit was to purchase eight shares of class A stock in the corporation, and was to pay one hundred twenty-five dollars per share. The subscription agreement contained the following language:

"The undersigned fully subscribed to the provisions of said Founders Certificate and the powers, objects and purposes thereof, the same in every respect as if copied herein; no oral representations constitute any part of this subscription, but this instrument constitutes all the terms and conditions of this purchase, subscription agreement. (The promotion and sales expense of this stock shall not exceed that as allowed by laws of this state.)"

Practically all of the complainants testified that they bought syndicate units on the faith of their confidence in the bank. Some of them testified that they had faith in the local solicitor, and that it was represented to them that no more than twenty-five per cent would be used as promotion expenses.

Aside from these certificates, there was no evidence of any sale of stock in the National City Finance Company, Inc. It was shown that Magee prepared a very enticing prospectus in regard to the National City Finance Company, Inc., it being proposed to operate that corporation for the purpose of discounting repair and labor notes taken by garages and automobile repair shops, such discounts to produce considerable returns.

A photostatic copy of G. L. Donald's letter was included in this prospectus, but the letter from Magee to the bank was not there given. Many recommendations of Magee, signed by banks and banking departments of this and other states, were included therein; also a copy of the syndicate certificate, and a copy of the proposed contract by which the National City Finance Company, Inc., would operate with its customers. The purchasers of the syndicate units saw this prospectus. When the sale was made by the Oklahoma solicitor, the purchaser would make out a check on a local bank, or secure a cashier's check or exchange, and forward same to Magee for the syndicate unit, who would deposit these checks in the bank to the credit of the Founders' Syndicate. A substantial copy of one of these checks follows:

"—— 193—
"Ardmore, Oklahoma.
"To Oklahoma Bank,
"Pay to the order of Deposit Guaranty Bank & Trust Company, Jackson, Mississippi.
A/c Founders Syndicate
"Five Hundred Dollars                               $500.00
"E. B. Luke."

In January, 1931, Magee furnished the bank a regular signature card, showing that he expected to withdraw by checks funds from that account on the signature, "Founders Syndicate, by J. I. Magee."

In this manner an amount in excess of nine thousand dollars was deposited with the bank, to the credit of the Founders' Syndicate. Included therein, however, is the amount in excess of three thousand dollars which was shown by Magee to be his own personal funds, and in this he is not contradicted.

G. L. Donald, president of the bank, knew that Magee was promoting the organization of a corporation, but did not know any of the terms and conditions upon which the syndicate subscribers dealt with Magee, its manager. Major Donald did not know that the prospectus contained his letter as sent out by Magee; he did not write the letter with that in view. There was never any communication between any of the complainants in the bill and the bank during the year 1931.

When the certificates of membership were sold to the purchasers, they would deliver to the solicitors their checks, payable as above stated. These checks were forwarded to Magee by the solicitor, who would himself or through his employees deliver these checks to the bank, and it credited the proceeds to the Founders' Syndicate. On receipt of the check, Magee would forward to the subscribers (complainants in the court below) printed unit certificates in the Founders' Syndicate for the number of units purchased, and signed, "Founders Syndicate

by J. T. Magee, Manager.'' The syndicate certificates were exactly as represented in the prospectus.

In 1931 Magee, from time to time by sundry checks, in accordance with his signature card, withdrew the entire amount of these deposits from the bank. Most of it, on being withdrawn, was deposited by Magee in his separate account with the bank.

No stock of the corporation, or syndicate certificates, were ever sold in the state of Mississippi, and no application was ever made to the secretary of state for a permit, either for the syndicate or for the corporation.

Magee did not show any specific item expended by him in the promotion plan, did not produce any of his books or records, but claimed all of the Founders' Syndicate deposit was expended by him in promotion expense; likewise, also, a large amount of his private funds. His explanation of the depositing of these funds to his private account is that he advanced his private funds for commissions to solicitors and other promotion expenses, repaying himself from the Founders' Syndicate funds. The syndicate or pool subscribers did not pay the solicitors who sold units to them these commissions.

In fixing liability against the bank the chancellor was of the opinion that the bank was unfaithful in its relation as trustee, and was liable to the complainants, because it was charged with notice, and wrongfully paid out money without investigation, (1) because of the correspondence with Magee, and (2) because of the specially prepared checks by which most of the money was ordered to be paid to said bank, and the checks of Magee against this fund, by means of which he was permitted to pass it to his own account without authority to do so.

At the outset we will say that if the decree against the bank is to be upheld, it must be upon the basis adopted by the chancellor.

1. The checks or exchange in this case, drawn by the complainants, the drawers, were made payable to the

Deposit Guaranty Bank & Trust Company, "A/c Founders Syndicate," were forwarded to Magee, and Magee directed the bank to place the proceeds thereof to the credit of the Founders' Syndicate. It may be argued that the words "A/c Founders Syndicate," following the name of the payee bank, were not sufficient instruction to the payee bank that it deposit the proceeds to the credit of the Founders' Syndicate, the words "to be deposited on" not being therein immediately preceding "A/c Founders Syndicate." The writing on the check was a strong indication that the drawer thereof did not desire the bank to credit the amount to the drawer thereof. This writing was more than a mere memorandum. But this case is relieved of any doubt when we consider the testimony of J. E. Williams and Mrs. Barnes, two of the complainants who testified that it was their intention that the proceeds of their checks be credited to Founders' Syndicate. In addition to that, in the letter written by Magee to the bank, he told the bank, in effect, that it was his expectation to open such an account which would be subject to check, and not subject to the state securities law, and inclosed his signature card.

We are of the opinion, therefore, that the bank obeyed the instructions and intentions of the drawers of the checks in placing the same to the credit of the Founders' Syndicate. Of course, if the words "A/c Founders Syndicate" had been omitted from the check, and there had been no instructions to the bank, it would have been the duty of the bank to hold the funds as trustee and debtor of the drawers of the checks. Our conclusion is that the bank discharged its duty to these complainants in depositing the proceeds thereof to the credit of the Founders' Syndicate.

2. Was Magee—a self-constituted manager of the Founders' Syndicate—authorized to draw checks on the funds so deposited to the credit of Founders' Syndicate? The bank's knowledge as to this matter came from Ma-

gee's letter in which he stated to the bank that he wished to open such an account subject to check. All the complainants dealt with Magee as the manager of the Founders' Syndicate; they forwarded their checks to him; they received from him the syndicate's certificates signed by him as manager thereof. The deposits were promotion funds. They knew that at least a part of the funds was to be used as expenses; so that there can be no question but that Magee was recognized by them as manager of the Founders' Syndicate to withdraw the funds. Their complaint now is, in fact, if not so stated, that instead of withdrawing a part of the funds on his check, he withdrew all of them. It would not be reasonable to say that these twenty-one people who went into the pool with Magee expected to put such funds into the bank without any provision for the withdrawal of same by some authorized person, in fact, the record shows that they knew that a portion of these funds was to be expended in the promotion of the corporation by Magee; so that on the facts there is no question but that it was the bank's duty to honor the checks drawn on the Founders' Syndicate by Magee, and it would have breached a duty if it had failed so to do.

In our opinion, therefore, it is beyond controversy that the bank discharged its duty to the complainants who drew the checks payable to it; that such were deposited in the manner desired and instructed by the drawers thereof; and that the bank was authorized to pay the checks drawn by Magee in the manner shown on the signature card furnished by him to the bank. The bank breached no duty in receiving or paying out the funds.

The master correctly held that the bank did not enter into a conspiracy with Magee to defraud these appellants, and also that there was no notice to the bank of any trust whatever so far as the bank was concerned. The bank did not know that there was printed on the syndicate's certificate that Magee would not expend more money in the promotion of this corporation than that al-

lowed by the laws of the state of Mississippi. It never saw the certificate. The complainants did so know, but never advised the bank at any time during the entire year 1931 of their desire that the bank act as their trustee and limit Magee's withdrawal of the fund. As we see it, the bank was entirely innocent when we consider here the written documents in the record, and to which we have specifically referred.

It is just as clear, so far as the bank was concerned, that there was no notice that any of these funds so deposited with it were payment, in whole or in part, for stock in the proposed National City Finance Company, Inc. The bank did know that if any money was forwarded for credit to the National City Finance Company, Inc., that its duty would be to hold the money in accordance with the instructions of the secretary of state. Funds for the sale of the stock in the National City Finance Company, Inc., the proposed corporation, and funds devoted to the Founders' Syndicate were, so far as the bank was concerned, two entirely different matters, the former being a passive account with the bank as a stakeholder until the funds were released by the secretary of state, and the latter being an active account subject to the check of the Founders' Syndicate at all times; and there was no notice to the bank of any kind that Magee was not spending this fund in accordance with the wishes and directions of the persons holding the syndicate's certificates, the appellants here.

No part of the money deposited to the Founders' Syndicate was appropriated by or paid to the bank, and the bank received no benefit from these funds. The relation of debtor and creditor was by the action of these complainants created between the bank and the Founders' Syndicate. There was no special deposit of the funds; no trust relation was created.

The case at bar falls within, and is controlled by, the case of Eyrich, Adm'r, v. Capital State Bank, 67 Miss. 60, 6 So. 615, wherein it was held that "ordinarily a bank

has no concern with the application of money paid out by it upon properly signed checks, nor is it bound to take notice of private memoranda upon checks presumably made for the information of the drawer;'' and where a check ''properly signed in the firm-name is presented to a bank having on deposit funds of the partnership, although there are circumstances known to the bank or some of its officers which would suggest doubts as to the destination of the fund, and an investigation would disclose to what purpose the funds were being applied, the bank is not bound to refuse payment and suspend its ordinary course of business to satisfy itself as to the proper application of the fund.'' And ''if a partner checks in the firm-name against the partnership funds in a bank, fraudulently intending to apply the money to his individual use without authority, and does so apply it, the bank is not liable to the remaining members of the firm unless there is either a fraudulent purpose on the part of the bank or actual knowledge of the fraudulent design of such partner.''

The case of Bank of Hickory v. McPherson et al., 102 Miss. 852, 59 So. 934, in no way modifies or changes the rule announced in the Eyrich Case, supra. The court there held that the bill of complaint charged actual knowledge of the bank of the official character of the funds handled by it exclusive of the information conveyed by the form of the check. But there the decision rested upon the fact that the check itself was drawn, payable to Harper, commissioner, and that the Bank of Hickory permitted Harper to place the funds derived from the checks drawn on another bank to the credit of himself, individually. That case is not before us. In the McPherson case is cited, with approval, the case of Duckett v. National Mechanics' Bank, 86 Md. 400, 38 A. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513, wherein two checks payable to the bank were involved, one reciting that the proceeds thereof were to be deposited to the credit of Claggett, individually, and the other, to the

credit of Claggett as trustee. The check payable to Claggett, individually, was so credited by the bank; and the court held that he was entitled to draw out those funds so credited according to the direction of the drawer, and that the bank was under no obligation and had no authority to interfere with him in doing so, and was not liable for Claggett's misappropriation of the first check. The second check, however, directed that the proceeds thereof be deposited to the credit of Claggett as trustee. The bank credited the fund to Claggett, individually, and disregarded the direction of the check, and Claggett withdrew and appropriated the proceeds. The court held that the bank violated its duty in crediting the proceeds of the second check to Claggett, individually, and that it should have credited, as directed by the drawer of the check, the proceeds thereof to Claggett as trustee.

The effect of the whole transaction in the case at bar was that the drawers of the checks constituted the payee bank their agent to transfer the funds from the various banks on which their checks were drawn to the credit of the Founders' Syndicate, thus creating the relation of debtor and creditor between the bank and the Founders' Syndicate. See Michie on Banks and Banking, vol. 5, pp. 32, 58, and 94.

The cases of Milano v. Sheridan Trust & Savings Bank, 242 Ill. App. 362; Sims v. United States Trust Co., 103 N. Y. 472, 9 N. E. 605; Bjorgo v. First National Bank of Emmons, 127 Minn. 105, 149 N. W. 3, L. R. A. 1915B, 287; Bristol Knife Co. v. First National Bank of Hartford, 41 Conn. 421, 19 Am. Rep. 517, are all cases in which the drawer of a check forwarded the same to a bank named as payee without further instruction, and the bank wrongfully credited the proceeds of said checks to some one other than the named drawer of the check. The wrong committed by the bank was in depositing the funds so received to the credit of a person not named in the check or entitled to have credit for the deposit, the drawer not being indebted to the bank.

The Blue Sky Law (Code 1930, sec. 4178 et seq.) is not involved in this case. No stock was sold in this state thereunder. Mississippi Power Company v. May (Miss.), 161 So. 149; Mississippi Power Co. v. May (Miss.), 161 So. 755, and White v. Stewart, 166 Miss. 694, 145 So. 747. We conclude, therefore, as to the bank, that the court below erroneously held the bank liable, and that the case should be reversed and the bill dismissed as to it.

As to Magee's liability, he did not file exceptions to the report of the master, and so far as the facts are concerned, the chancery court having approved the report of the master as to him, he has no standing in this court.

He, however, urges that a demurrer to the bill interposed by him, and overruled by the court below, should be sustained. In the main, his contention is that the bill is filed upon the theory that complainants are entitled to recover on an express trust, whereas the master held him liable on an implied trust. The bill prayed for general relief, and the facts involved, including the exhibits, would be the same whether the action was based upon an implied or an express trust. We, therefore, find no error in this respect. He further urges that he was not sued for an accounting. The answer to this is obvious, he was sued for the entire sum received by him from the complainants. The deposits were promotion funds, and if the party had rightfully expended all, or any part of them, he should have made that fact manifest to the court. He declined to show the specific expenditures made by him in this promotion scheme, and his reason for not establishing these amounts was not believed by the master; and, without going into it, we think the decree of the court below is fully warranted by the evidence and exhibits in this case.

Affirmed as to Magee; and reversed and bill dismissed as to the bank.