Mississippi-Gulfport Compress Warehouses, Inc., appellant, filed its application for a certificate of convenience and necessity in order that it might operate motor trucks as common carriers or restricted common carriers in this state before the appellee, Public Service Commission of the State of Mississippi, under Chapter 142, Laws of Mississippi, 938.
From the order of the appellee dismissing appellant's petition, and after numerous protests from interested parties, under the Statute, the circuit judge granted a supersedeas. The cause was then heard on filing of the record in the circuit court, which being heard in that court the order of the utility Commission was affirmed by that court, and from that judgment the applicant appeals to this Court.
The substantial question presented here is, Did the applicant have the power, under the grants in its charter to operate the common carrier business, general or restricted, and if that was not true ought the Commission to have heard evidence as to the business conducted by it prior to this application?
Appellant was granted a charter under the laws of Delaware. It had its office at Gulfport in this state, and was engaged generally in compressing cotton and as a cotton warehouse. *Page 175 
We will assume at the outset that the appellant's petition in form and substance complied with the Statute and rules adopted by the Utility Commission.
After the matter was at issue before the Utility Commission and the several protestants, the Commission ordered a transcript of its record and file submitted to the Attorney General of the state, who was by the controlling act constituted its legal adviser, seeking from him his opinion as to whether or not the charter of the appellant authorized it to carry on the business of common carrier or restricted common carrier.
The Attorney General transmitted his written opinion with the file and a certified copy of appellant's charter from the office of the secretary. His opinion was to the effect that applicant's charter did not grant the powers sought to be carried on by it.
The route proposed was irregular and the commodity it proposed to transport was cotton and was not limited to its own bona fide customers, but it sought to operate as a carrier for hire.
The act controlling here is very comprehensive and conferred generally upon the appellee Commission the power to regulate and supervise motor carriers operating upon the public highways of this state, such motor vehicles being classed therein as common carriers, restricted common carriers, and motor vehicle contract carriers.
Section 3, Laws 1938, Chapter 142, defines restricted common carriers as follows: "The term `Restricted common carrier by motor vehicle' means any person who or which undertakes, whether directly or by a lease or other arrangement, to transport passengers or property of any restricted class or classes for the general public by motor vehicle for compensation, whether over regular or irregular routes, or to transport passengers or property for the general public by motor vehicle for compensation over irregular routes."
Section 8 of said Acts is as follows: "No common carrier by motor vehicle or restricted common carrier *Page 176 
by motor vehicle not herein exempted shall engage in intrastate operation on any highway within the state unless there is in force with respect to such carrier, a certificate of public convenience and necessity issued by the commission authorizing such operation; provided, however, that if any such carrier or predecessor in interest was in bona fide operation as a common carrier or restricted common carrier by motor vehicle on January 1, 1938, over the route or routes, or within the territory for which application is made and has so operated since that time, or if engaged in furnishing seasonal service only, was in bona fide operation on January 1, 1938, during the season ordinarily covered by its operation, except in either instance as to interruptions of service over which the applicant or its predecessor in interest had no control, the commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application is made to the commission as provided in paragraph (b) of this section, and within six months after this act shall take effect. Pending determination of any such application, the continuance of such operation shall be lawful."
The appellant had operated prior to the final order under a temporary order or certificate, but the final order here under review revoked the temporary compliance order. The appeal to the circuit court from this final order, dated April 5, 1939, is authorized by Sections 28 and 29 of the Act.
The charter of appellant gave it the right to construct, purchase, and maintain gins, compresses, and warehouses with many powers incident thereto.
It is or must be contended by appellant that these clauses in the charter expressly or by clear implication granted it the right to operate the business it had applied to the Commission to carry on.
"To construct, hire, purchase, operate and maintain all or any conveyances for the transportation in cold storage *Page 177 
or otherwise by land or by water of any and all products, goods or manufactured articles;"
"To do all and everything necessary, suitable and proper for the accomplishment of any of the purposes or the attainment of any of the objects or the futherance of any of the powers hereinbefore set forth, either alone or in association with other corporations, firms or individuals, and to do every other act or acts, thing or things incidental or appurtenant to or growing out of or connected with the aforesaid business or powers or any part or parts thereof, provided the same be not inconsistent with the laws under which this corporation is organized."
This charter was before the Commission as shown by the judgment of the circuit court. However, there can be no doubt that the rule is that judicial notice can be taken of documents in the office of the Secretary of State as one of its departments from which judicial knowledge may be acquired. Briscoe v. Buzbee,163 Miss. 574, 143 So. 407, 887, and especially Witherspoon v. State,138 Miss. 310, 103 So. 134. This charter is to be construed under the Laws of Delaware.
In the case of Williamson v. Gordon Heights Ry. Co., 8 Del. 192, 40 A. 933, 934, its rule is thus stated: "There is no rule of construction more fixed and unyielding than that requiring strict construction of grants to corporations." That case approved this statement: "In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation. This is the rule sustained by all the courts in this country and in England."
In our own state this rule obtains as announced in Abby v. Billups, 35 Miss. 618 at page 630, 72 Am. Dec. 143.
This charter taken in its entirety has as its prime object the operation by the corporation of compresses and warehouses. The broad powers enumerated only affect those powers incidental to and related to these specific grants of power. *Page 178 
The authority sought by the appellant from the appellee was to do the business of a common carrier for hire without any regular route and not confined to producers, but necessarily included dealers in cotton, and if the application had been granted the receipt for transportation would not have been limited as to classes of shippers nor would deliveries in Gulfport have been delivered by its trucks to its own warehouse.
The authority to own and operate conveyances for the transportation by land and water for the conveyance of all products or manufactured goods could not be converted into the power to operate a public utility — i.e. a common carrier or a restricted one, nor would the operation of such a public utility be regarded incidental to the warehouse or compress business.
The transportation referred to in the quoted paragraph has reference to its dealing with its own business and customers and not to the public generally.
If appellant only intended to transport cotton to its own warehouse, the title to which was in the actual producer, then it needed no certificate from the appellee because such shipments are exempted. See Chapter 142, Laws 1938, Section 4(f). That kind of an operation would not be that of a common, or restricted common, carrier.
There is such a vast difference between the transportation rights granted in its charter and the operation of a restricted common carrier as a public utility as that it seems to us to be beyond legitimate discussion.
The appellant's construction of its charter would mean that thereunder it could operate a railroad. The arguments fall of their own weight. The argument advanced that the power or right it seeks here is found in the blanket provision which it now says authorizes it to engage in "any other business which may from time to time seem to the directors capable" must be held to relate to the precise purpose and grant of the charter.
The position contended for would lead to the inevitable unthinkable conclusion that the directors would determine *Page 179 
what other business would in some slight degree enhance its real or prime business and thus put the directors on an equal or higher plane than the Sovereign, the creator of the corporate rights. That construction would mean that the corporation could operate a banking, a telegraph, a telephone, or any other business it saw proper.
In common parlance such construction would permit "the tail to wag the dog."
We are of the opinion that the Utility Commission properly refused the certificate applied for herein, because this corporation had no charter power to conduct the business of a carrier for hire either common or restricted, and if it had shown by its evidence the business it had theretofore done, the Commission could not by its certificate bless, forgive, or condone its past sins.
If authority is wanted for our position, we cite as illuminating and instructive the case of Haugh Keenan Storage 
Transfer Co. v. Penn. Public Utilities Comm., 133 Pa. Super. 175,2 A.2d 548.
It would be idle to say that the appellee here, the Commission, should confer upon the appellant the authority to conduct a business which it had no power under its charter to operate. It was a question of charter powers which stood at the door of inquiry and was properly disposed of by the appellee and the circuit court.
Affirmed.