MAY *v.* STATE.

No. 41813 March 6, 1961 127 So. 2d 423

*Charles H. McCraine, Jr.,* Houston; *R. W. Boydstun, Sr.,* Louisville, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant, J. M. May, was convicted in the Circuit Court, First Judicial District of Chickasaw County, of embezzlement. The offense involves a wrongful conversion to his own use, by a promoter of a proposed insurance company, of money paid by a subscriber for a preincorporation subscription for shares of stock.

Omitting the formal parts, the indictment charged: "That J. M. May in said District, County and State, on or about the 20th day of November, A. D., 1958, being then and there the trustee and agent of one W. V. Metts have in his possession and under his care as such, money and property of the said W. V. Metts in the amount of $2,000.00 good and lawful money of the United States, and did thereafter, without the consent of the said W. V. Metts fraudulently and feloniously secrete, conceal and convert same to his own use, and feloniously embezzle the same, . . . ."

Apparently the indictment was based upon Miss. Code 1942, Rec., Sec. 2115 which provides in part that, if any trustee or agent of any private person "shall embezzle or fraudulently secrete, conceal, or convert to his own use, or make way with, or secrete with intent to embezzle or convert to his own use, any goods, rights in action, money, or other valuable security, effects, or property of any kind or description which shall have come or been intrusted to his care or possession by virtue of his office, place, or employment, either in mass or otherwise, he shall be guilty of embezzlement, . . . ."

The constituent elements of the offense are (1) an agent or trustee of a private person, (2) embezzling or converting to his own use, (3) rights in action, money, or other valuable security, effects or property of any kind, (4) which have been intrusted to his care or possession by virtue of his position or employment. Code Sec. 2115; 18 Am. Jur., Embezzlement, Sec. 2.

In the early fall of 1958, W. V. Metts, of Houston, was Superintendent of the city schools, J. M. May came to his office and told him he was selling stock in a proposed life insurance company he was organizing, to be named the "National Farmers Bank and Life Insurance Company" or "National Farmers and Bankers Life Company". Metts stated he was not interested, but, after May returned two or three other times and talked with him, referring to other persons in nearby cities who had subscribed to the stock, Metts agreed to subscribe for ten shares at $10 per share. On October 29, 1958, he wrote a check for this subscription payable to "J. M. May, Trustee," in the amount of $100, drawn on the Houston, Miss., State Bank.

Defendant later urged Metts to subscribe for additional stock in the proposed company. Metts told him he had a certificate of deposit in the Bank of Houston for $2,200, which could not be cashed until May 1959. Actually its maturity date was October 6, 1959. Defendant replied that he could put up this certificate as security for the subscription. Apparently Metts delivered it to May without any assignment at the time, but later May advised him the "trustees" of the proposed company would not take the certificate without an assignment. Metts agreed to subscribe to $2,000 worth of stock. On November 20, 1958, he endorsed and subscribed the certificate: "For value received I, we or either of us do hereby assign this certificate to J. M. May." Metts said defendant was supposed to put the instrument in the bank with other money which he had received to organize the company, and, when organized, Metts was to receive $2,000 worth of stock. Defendant advised him that no person could purchase more than that amount. Since the certificate was in the principal amount of $2,200, and Metts had already given May a check for $100, May took the assigned certificate and gave Metts his check for $300. In short, Metts turned over to defendant "as

trustee'' $2,000. Defendant was to deposit it in a bank with other subscription money, and, when the company was organized, he would issue Metts that amount of stock. Defendant told him the shares would be delivered by January 1, 1959. However, at the time of the trial in April 1960, Metts had not received from May any stock or any of the money which he had intrusted to May for the subscription. Metts said he never gave defendant permission to cash the certificate, but he later ascertained the bank had paid, on defendant's endorsement, the value of his certificate before maturity. Metts said that May's name as trustee on the $100 check was ''the way he wanted it made out''. He admitted execution of the assignment of the certificate, but said it was agreed that defendant was not to cash it, but rather put it in the bank until the stock was issued.

On November 19, 1958, one day before assignment of the certificate, Metts signed, at May's request, a written subscription for 250 shares of preferred stock of the proposed company. The subscription letter further stated: ''I have $2,000.00 fully paid. And I do hereby authorize you to use said sum for the purpose of capitalizing the Company and in payment of all necessary expenses of organizing the Company. . . .

''I understand that the shares of stock will be delivered to me when the charter is issued and organization completed.''

May told Metts that he had already talked with the Insurance Commissioner of Mississippi, who had approved the proposed incorporation. Metts later ascertained this was false. He said he turned the money over to May for safekeeping, until the shares were issued to him. He never received any stock. This Court may take judicial notice of the official records of the Secretary of State and the Insurance Commissioner. Miss.-Gulfport Compress and Warehouses, Inc. v. Public Service Comm., 189 Miss. 166, 177, 196 So. 793 (1940); Gully

v. Lumbermen's Mutual Casualty Co., 176 Miss. 388, 405, 166 So. 541, 168 So. 609 (1936); Jefferson Standard Life Insurance Co. v. Noble, 185 Miss. 360, 188 So. 289 (1939); Stone v. Robinson, 219 Miss. 456, 460-461, 69 So. 2d 206 (1954); Briscoe v. Buzbee, 163 Miss. 574, 143 So. 407, 887 (1932). Those records reflect there is no Mississippi company incorporated under the stated names, or any foreign corporation with either of the names authorized to do business in this state.

E. A. Enochs, President of the Bank of Houston, saw May for the first time when he came to the bank to get a transfer to himself of Metts' certificate of deposit. Enochs refused, because it had not been assigned to him. Later May returned with Metts' assignment, and the account was transferred by the bank to May. Subsequently on December 5, 1958, May endorsed on the certificate over his signature "Pay to Tyler (Texas) Bank and Trust Company or order". The Bank of Houston then paid the proceeds to the Tyler bank. Enochs identified defendant's signature on the certificate.

Appellant argues that the verdict is contrary to the law and the overwhelming weight of the evidence, since Metts delivered the money to May not as his agent or trustee, but for purchase money for the stock, creating between them only the relationship of debtor and creditor. This requires an analysis of the characteristics of a subscriber-promoter status.

 The defendant was a promoter of a proposed insurance company. He sold Metts a preincorporation subscription for shares of stock. In the absence of a special agreement to the contrary, supported by a valuable consideration, a subscription to the capital stock of a corporation, to be later organized, is nothing more than an offer of a specific sum for the use of the corporation when it comes into existence. Hence the offer may be withdrawn at any time before the organization of the corporation. Wright Brothers v. Merchants and Plant-

ers Packet Co., 104 Miss. 507, 61 So. 550 (1931) ; 13 Am. Jur., Corporations, Sec. 226, 227, 231; 4 Fletcher, Cyclopedia of Corporations (Perm. Ed. 1931), Sec. 1425.

■■ Hence the promoter of a proposed corporation who solicits and procures stock subscriptions is the agent of the subscribers to hold the subscriptions until the corporation is formed, and then turn them over to it without any further act of delivery on the part of the subscribers. 13 Am. Jur., Corporations, Sec. 226. ■■ Although promoters are not trustees in a strict sense, they occupy a fiduciary or quasi-trust relation both toward the corporation when it comes into existence, and toward the persons who are subscribers for its capital stock. 18 C. J. S., Corporations, Sec. 120. The promoter is not in any sense the agent of a corporation before it comes into existence, because there cannot be an agency unless there is a principal.

■■ In this instance, May was the promoter of the proposed insurance company, and, when he received Metts' subscription and the $2,000 represented by the certificate of deposit, he received the money as the agent and trustee of the preincorporation subscriber, Metts. See 18 C. J. S., Corporations, Secs. 134-136; Deposit Guaranty Bank and Trust Co. and J. I. Magee v. Luke, 174 Miss. 98, 118, 164 So. 30 (1935). The dealings of a promoter, standing in this fiduciary relation, must be open and fair, and he is guilty of a breach of trust if he benefits by any advantage or profit at the expense of the subscriber. 13 Am. Jur., Corporations, Secs. 115, 121; 4 Fletcher, Ibid. Sec. 1429; 1 Hornstein, Corporation Law and Practice (1959), Secs. 91-95.

■■ With these basic principles in mind, it is manifest that the evidence amply warranted appellant's conviction of embezzlement, which is the wrongful appropriation or conversion of property where the original taking was lawful or with the consent of the owner.

Jones v. State, 223 Miss. 812, 79 So. 2d 273 (1955); 29 C. J. S., Embezzlement, Sec. 4.

Defendant received $2,000 from Metts under the latter's preincorporation subscription. He was the promoter of the proposed company and, in receiving the money, he took it as Metts' agent and trustee. The money was intrusted to defendant's possession by virtue of this agency and fiduciary relation. Further, defendant fraudulently converted it to his own use. He obtained from Metts an assignment of the certificate. The money was to be held by him to pay for Metts' subscription when the company was organized. However, appellant converted that money intrusted to him by endorsing, transferring and paying it to the Tyler, Texas, Bank. The jury could find this was a conversion for his own personal use. If there were any other explanation, defendant could have given it at the trial, but he elected not to testify. The subscription letter which Metts signed on November 19, 1958, did not alter the fiduciary and agency relation between him and defendant.

Lawson v. State, 125 Miss. 754, 88 So. 325 (1921), upon which appellant relies, and in which the court found a mere debtor-creditor relationship, involved different circumstances. Church officers made an oral contract with Lawson to construct a new church building for $6,-800. They initially paid him $2,850 on the total contract price. Lawson absconded and appropriated that sum to his own use. It was held that the money was not turned over to him in trust for the specific purpose of purchasing materials, but as a part payment on the contract price. Hence the fiduciary or agency relation essential to embezzlement never existed between the parties. The only contact was that of debtor and creditor. Somewhat similar to *Lawson is* Jackson v. State, 211 Miss. 828, 52 So. 2d 914 (1951), where there was an absence of any fiduciary relation and intrustment of the property to defendant.

More analogous to the present case is Davis v. State, 228 Miss. 441, 87 So. 2d 900 (1956), cert. den., 352 U. S. 981, 77 S. Ct. 381, 1 L. Ed. (2) 365, where defendant's conviction for embezzlement of a quantity of beer was affirmed. He received the property under an agreement to return for it certain exchanged beer from the manufacturer. Existence of the trust or agency was also clearly established in Sherman v. State, 234 Miss. 775, 108 So. 2d 205 (1959). In the instant case the evidence supporting the finding of receipt by defendant of the money as an agent or trustee is stronger than in Davis v. State. The established rule that a promoter receiving money under a preincorporation subscription takes it as agent and trustee for the subscriber manifestly applies.

██ It was not error to refuse an instruction stating that Metts "was repaid for the check to J. M. May, trustee, for $100, and you shall not consider such $100 check to J. M. May, trustee." The indictment charged appellant with embezzling $2,000, thereby giving him credit for having paid Metts the $100 in question. The refused instruction could not refer to restitution. Sherman v. State, *supra.* It was an improper comment on the evidence concerning something that was not an issue.

Affirmed.

*McGehee, C.J.,* and *Arrington, Rodgers* and *Jones, JJ.,* concur.