## TUTTLE *v.* STATE

No. 43438          April 12, 1965          174 So. 2d 345

W. P. Tuttle, president of a corporation, was convicted for embezzlement, and he appealed. Affirmed.

*Harvey B. Hutchins, Richard L. Yarborough,* Gulfport, for appellant.

734

*G. Garland Lyell, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

Lee, C. J.

The appellant, W. P. Tuttle, was convicted in the Circuit Court of Harrison County, Mississippi, for the crime of embezzlement and was sentenced to pay a fine of $500.

In 1960 W. P. Tuttle organized Southern Savings & Loan Association at Gulfport. He was both the president of the corporation and was also a licensed broker of stocks. John Gardner, a lawyer, bought and was delivered 200 shares of stock in the corporation under a subscription contract in which he dealt directly with Tuttle.

At subsequent dates, on June 24, 1960 and on July 27, 1960, by certificates No. 1581 and No. 1582, respectively, Gardner subscribed for 800 and 400 other shares. These shares were $2.50 each, aggregating $2,000 and $1,000. In No. 1581 there was a down payment of $500, and on No. 1582 $250. These payments, as well as those deferred, were made by checks, and the cancelled checks were introduced in evidence. Total payments aggregate $2,650.

When Gardner tendered the remaining $350, due on the subscriptions, Tuttle refused to deliver the stock, saying that he could not do so. He did not deliver the stock nor did he pay Gardner the money back. Consequently Gardner sued on the bond, deposited with the Secretary of State, to compel the delivery of the stock, or alternatively, to have his money repaid. The court ordered Tuttle to deliver the stock in thirty days, or, failing to do so, he should repay the money. The court order, not having been complied with, the Secretary of State was required to cash the bonds and make restitution to Gardner; and that order was obeyed.

It was shown that Tuttle used a trade name of W. P. Tuttle & Company, and that Gardner, at no time, dealt with anybody in connection with these stock transactions except Tuttle. The checks, which Gardner gave, were in payment for the stock. He was led to believe and thought that Tuttle was the sole proprietor of W. P. Tuttle & Company. His understanding was that he was buying the stock directly from the company; and that Tuttle was taking his money and would deliver the stock to him. In other words, Tuttle was to use this money solely for the purpose of paying Southern Savings & Loan Association for the stocks that Gardner was to receive in the organization; and the checks were for the purpose of paying for his shares of stock.

For the defense, Mrs. Virginia Rice, Tuttle's former secretary, testified that these stock purchases, aggregat-

ing 1200 shares, were Tuttle's personal stock which he was selling to Gardner. However, on cross-examination, she admitted that Tuttle was a broker of all the sales of stock of the company, and that he sold stock through the name of W. P. Tuttle & Company, the trade name of W. P. Tuttle. He also had other salesmen besides himself, and he sold the stock after it had been issued to him. He had an office in the company's place of business, and there conducted his business at all times during the occurrences here in question.

Henry Leroy Webb, secretary of the company, testified that, according to the books, Tuttle still had 5,500 shares outstanding in his name. The original issue to Tuttle had been 20,000 shares.

The appellant did not testify.

On rebuttal, Gardner testified that he had already paid to Tuttle $2,650 and tendered the balance of $350 when he learned of any question about this stock.

The appellant has assigned several alleged errors. He contends that the relationship between him and Gardner was that of creditor and debtor; that Gardner did not pay his obligations, on deferred payments, in accordance with his promise; and that he had the right to have full payment, as provided in the contract, before delivering the stock. Besides, he also contends that, in order to constitute the crime of embezzlement, the appellant must have procured the subject property in a trust, fiduciary, or agency relationship, and that the evidence failed to show such a relationship.

The trouble about these positions is that Tuttle, at no time, during their relations, raised any question at the time of payments. He accepted Gardner's payments when and as they were paid without a murmur. When demand was made upon him to deliver the stock on payment of the remaining $350 still due, he made no excuse for not delivering, except that "he said that he could not deliver the stock."

On this question, see the case of May v. State, 240 Miss. 361, 127 So. 2d 423 (1961). In that case, Metts, at May's request, had subscribed for 250 shares of the company's stock and paid $2,000 therefor. However, Metts did not get the stock. The opinion held that May received the money as the agent and trustee of Metts. The Court also held that the evidence amply sustained the appellant's conviction of embezzlement, which was the wrongful appropriation or conversion of property where the original taking was lawful or with the consent of the owner; and also cited Jones v. State, 223 Miss. 812, 79 So. 2d 273 (1955), to show the difference between embezzlement and larceny.

■■ These contentions also fly in the face of the evidence in the case, which is directly to the contrary. As shown by the testimony of Gardner, he paid this money to Tuttle on the understanding that it was to be used for the payment of stock purchased. But when Gardner had complied with the contract, Tuttle refused to deliver the stock. Besides, the appellant did not even testify, nor did he offer evidence in conflict with the state's evidence. The prohibition against adverse comment and inference does not protect a defendant from the probative force of the evidence against him. Dealing with the failure of a defendant to testify, 1 Wharton's Criminal Evidence, sec. 146 at page 277 (12th ed. 1955), well says: "If a defendant does not attempt to rebut incriminating facts he cannot, merely by remaining silent, escape the natural and reasonable inferences deducible from such facts. For instance, if in a case of larceny the theft and unexplained or unsatisfactorily explained recent possession of the stolen property of the accused are shown, he cannot avoid the natural inference, deducible from such facts, that he is the thief, by failure or refusal to testify."

In Harvey v. State, 188 Miss. 428, 194 So. 925 (1940), the appellants were convicted on a charge of grand

larceny under the following circumstances: In May 1939, three suits of clothes were stolen from the store of a Mr. Mangum, and also certain clothing was stolen from another merchant, a Mr. McAlpin. The latter missed his clothes and informed the officers. John Sales had been noticed at a car parked near these two stores, and Rufus Harvey and his wife Annie had been seen in various stores and were under some suspicion. The officers arrested Sales and ordered him not to leave the car. Shortly thereafter the Harveys came to the car. Rufus had a pasteboard box, which was partly open, and the officers noticed clothing in the box. When Rufus saw the officers, he took a club from the car apparently for the purpose of striking the officers, but was arrested. Three suits of clothing were found in the box. The parties were taken to McAlpin's store, but he was unable to identify that clothing as missing from his store. However, upon inquiry of Mangum, he and some of his employees came, examined the clothing and identified it as his property. When the Harveys were arrested and the clothing examined, they remained silent. After its examination by McAlpin, they made no claim that they had purchased it from Mangum. Then, when Mangum and his employees were called to the store, the Harveys still maintained silence, making no claim to reference to it. They did not testify in the case, but rested when the state closed its evidence.

It was urged that the evidence was insufficient to show that either of the Harveys stole the clothing from Mangum's store, but mention was made of the fact that one or more clerks, working in the store that day, were not introduced to testify affirmatively that the appellant did not buy the clothing from them. When Mangum's clothing was identified, there was no evidence of the sale of these articles. The opinion finally said at page 434: ''While a defendant is not called on to testify in a case if he does not desire to do so, yet the circum-

stances of the case may be such as to lead a reasonable person to believe beyond doubt that their conduct was not consistent with innocence. The fact that they had the clothing and were accused of stealing it from another party and remained silent, giving no explanation at all, indicates to the reasoning mind that if they could have made the contention that they had bought the clothing and relieved themselves of suspicion they would have done so. While a person may remain silent where circumstances would require a prompt explanation consistent with innocence, inferences may be drawn from such silences in favor of guilt. It is the case of 'though silent, yet they speak out.' Taking all the circumstances involved, some of which it is unnecessary to detail, we think the evidence is such that the jury were warranted in finding both Annie and Rufus Harvey guilty; Rufus Harvey was the one who stole the clothing and had possession of it, and Annie was with him, and under the circumstances detailed above the jury was authorized to believe that she was merely engaging the clerk for the purpose of distracting his attention to the presence and action of Rufus Harvey. She was with him when he came to the car carrying the clothing which he had obtained in the Mangum store wherein she was present. All the facts indicate guilt and none of the facts indicate innocence so far as Rufus and Annie Harvey are concerned, and the judgment as to them will be affirmed.''

██ ██ The evidence of Mrs. Rice tended to show that the appellant was merely selling his own property. But the evidence of Gardner was to the effect that he paid the money to Tuttle, who, in turn, was to deliver the stock to him. This made a question for the jury, the trier of facts; and it was fully warranted from Gardner's evidence, together with the other circumstances, to find guilt beyond a reasonable doubt.

The Court finds no merit in the other assignments of error. Consequently the judgment is affirmed.

Affirmed.

*Gillespie, Rodgers, Jones and Brady, JJ.,* concur.