947 So.2d 964 (2005)
W.A. COLEMAN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00346-COA.
Court of Appeals of Mississippi.
November 1, 2005.
Rehearing Denied February 21, 2006.
*965 David M. Holly, Greenwood, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
EN BANC.
ISHEE, J., for the Court.
¶ 1. Petitioner appeals his conviction for embezzlement. Finding insufficient evidence to sustain the conviction, we reverse and render.

STATEMENT OF FACTS
¶ 2. W.A. Coleman and James Brown were deacons at the Pillow Chapel Missionary Baptist Church in Greenwood, Mississippi. As deacons, they were responsible for collecting the monthly tithes from the church members, depositing the funds in the church's bank account, and paying for authorized maintenance and repairs to the church facilities. Between January and July 2001, Coleman wrote checks payable to cash and drawn on the church's bank account totaling approximately $1,600.
¶ 3. When Brown became aware of Coleman's conduct, he notified the police and an investigation ensued. As a result, Coleman was indicted for embezzlement pursuant to Mississippi Code Annotated § 97-23-19 (Rev.2000).
¶ 4. In January 2004, the matter went to trial. Coleman testified that he had written those checks to compensate himself for payments he had made from his own funds for repairs done to the church's property. Coleman testified that the repairs included plumbing and electrical work, as well as maintenance to the church's lawn mower. The church's pastor, however, testified that before any authorized work could be done for the church, the deacons must have received prior approval from the congregation. Furthermore, the pastor testified that the plumbing work which had been done was minor, and that there had been no electrical work done at the church. The pastor testified emphatically that the limited repairs performed on the church were nowhere near $1,600 worth.
¶ 5. At the completion of the State's case-in-chief, Coleman made a motion for a directed verdict. He argued that the State had failed to prove that the money had been embezzled from a "corporation" or a "private person" as required by Mississippi Code Annotated § 97-23-19. Coleman further argued that the State had failed to prove any misappropriation for personal use. After hearing the parties' respective arguments, the trial court denied the motion. The jury subsequently found Coleman guilty of embezzlement, and he was later sentenced to a ten-year term of incarceration and ordered to pay restitution in the amount of $2,255.
*966 ¶ 6. Aggrieved by his conviction, Coleman appeals asserting the following: (1) whether the trial court erred in denying Coleman's motion for a directed verdict; (2) whether the trial court erred in limiting Coleman's cross-examination of James Brown; (3) whether the trial court erred in failing to grant a circumstantial evidence instruction; (4) whether the trial court erred in denying Coleman's motion for a directed verdict or, in the alternative, a judgment notwithstanding the verdict; and (5) whether the trial court erred in denying Coleman's motion for a new trial as the verdict was against the overwhelming weight of the evidence.

DISCUSSION
I. Whether the trial court erred in denying Coleman's motion for a directed verdict.
¶ 7. We begin our discussion with the standard of review. The Mississippi Supreme Court has consistently held that when reviewing a challenge to the sufficiency of the evidence, an appellate court must consider all of the evidence in the light most consistent with the verdict, and the State must be given the benefit of all inferences favorable to the verdict. Taylor v. State, 672 So.2d 1246, 1255 (Miss.1996). Furthermore, when the record evidence is such that reasonable jurors could have found the defendant guilty, the verdict is beyond the reviewing court's authority to disturb. Id. "[T]he critical inquiry is whether the evidence shows `beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under circumstances that every element of the offense existed. . . .'" Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). If the evidence points in favor of the defendant on any element of the offense such that a reasonable juror could not have found the defendant guilty beyond a reasonable doubt, the motion for a directed verdict must be granted. Edwards v. State, 469 So.2d 68, 70 (Miss.1985).
¶ 8. Coleman maintains that the trial court erred in denying his motion for a directed verdict at the close of the State's case-in-chief. He asserts that there was insufficient evidence to sustain his conviction as to the issue of who owned the money. Coleman was indicted under Mississippi Code Annotated § 97-23-19 which defines embezzlement by agents, bailees, servants and persons generally as follows:
if any director, agent, clerk, servant, or officer of any incorporated company, or if any trustee or factor, carrier or bailee, or any clerk, agent or servant of any private person, shall embezzle . . . or convert to his own use, any . . . money . . . which shall have . . . been intrusted to his care or possession by virtue of his office, place, or employment . . . shall be guilty of embezzlement. . . .
(Emphasis added).
¶ 9. When Coleman offered his motion for a directed verdict at trial, he argued that the State had failed to prove that the funds were embezzled from either a corporation or a private person. In opposition to the motion, the State, admitting that the church was not incorporated, argued that the church was a private person. Further, the State argued that in a church of that size, the trustees are considered the owners. The State asserted that since Brown was a trustee, he was an owner, thereby satisfying the statute's private person requirement.
¶ 10. Coleman countered that the evidence offered by the State did not support that conclusion. The checking account on which the funds were drawn was in the church's name. The State offered no evidence *967 that the money belonged to Brown. Furthermore, the record reflects that the pastor testified that the deacons had to have the congregation's prior approval before spending any of the church's money. Finally, Coleman and Brown were both church deacons and were equally accountable for the church's money. Coleman maintains that this evidence negates the State's assertion as to Brown's ownership of the funds.
¶ 11. The trial court subsequently denied Coleman's motion for a directed verdict. The trial court, while admitting that it's decision might be wrong, relied on State v. Journey, 105 Miss. 516, 62 So. 354 (1913) as the basis for its ruling. The defendant in Journey had been indicted for embezzling from a corporation. Id. The defendant's motion to dismiss was subsequently granted by the trial court. Id. The trial court ruled that the applicable embezzlement statute, which was the predecessor to Mississippi Code Annotated § 97-23-19, had no application whatsoever to a corporation. Id. The trial court concluded that the statute referred only to embezzlement from a private person. Id. The Mississippi Supreme Court reversed the trial court's ruling and held that "the language employed by the [l]egislature refers to trustees, factors, carriers, or bailees of both artificial and natural persons." Id.
¶ 12. In this appeal, the State argues that, based on Journey, the church should be considered an artificial person for the purposes of the embezzlement statute. However, the Mississippi legislature, has amended the embezzlement statute a number of times since the Journey decision. The current version includes corporations as the sole type of artificial persons who may be the object of embezzlement. See Miss.Code Ann. § 97-23-19. We are reminded that where the language used by the legislature in a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to the rules of statutory interpretation. State v. Heard, 246 Miss. 774, 781, 151 So.2d 417, 420 (1963). Therefore, we conclude that Journey has been superceded by the current statute and that it does not provide a sufficient basis for denying Coleman's motion for a directed verdict.
¶ 13. The Mississippi Supreme Court has enumerated the requisite elements of embezzlement, and this Court has updated the elements to reflect the language in the current statute. These elements are:
(1) an agent or trustee of a private person or [corporation]; (2) embezzling or converting to his own use; (3) rights in action, money, or other valuable security, effect or property of any kind; (4) which have been intrusted to his care or possession by virtue of his position or employment.
May v. State, 240 Miss. 361, 363, 127 So.2d 423, 425 (1961).
¶ 14. After an analysis of the statute and the relevant case law, this Court finds that implicit in these elements is the requirement that the State present proof beyond a reasonable doubt to establish the specific person or corporation that owned the embezzled money. A conviction for embezzlement requires proof of the identity of the corporation or private person whose goods and money the accused has embezzled. Bunkley v. State, 495 So.2d 1, 3-4 (Miss.1986). Proof as to ownership of the money and the extent of the agency relationship which existed are essential to distinguishing embezzlement from larceny. See Jackson v. State, 211 Miss. 828, 832, 52 So.2d 914, 915 (1951).
¶ 15. Returning to the record facts, it is clear from the undisputed testimony that the church was not a corporation. *968 Therefore, this Court focuses on the issue of whether there was sufficient evidence for a reasonable juror to conclude that Coleman embezzled funds from Brown, the private person named in the indictment. Even after considering all of the evidence in the light most consistent with the verdict, and after giving the State the benefit of all the inferences favorable to the verdict, we are unable to find that the evidence reflects that Brown had an ownership interest in the funds. The testimony reveals that Brown was merely a deacon in the church. He was responsible for collecting the money from the congregation, but he was not allowed to spend any of the money without prior authorization from the church members. Also, while there was testimony that Coleman gave several hundred dollars each month to the church in tithes, there is no evidence in the record that Brown had ever given any of his own money to the church. These record facts lead this Court to the conclusion that Brown had no ownership rights in any portion of the embezzled funds. Based on the record evidence, we are unable to conclude that a reasonable juror could have found Coleman guilty of embezzlement beyond a reasonable doubt as detailed in the indictment.
¶ 16. This Court emphasizes that a criminal conviction, and the resulting loss of liberty, must rest on finite evidence rather than conjecture or surmise. Sisk v. State, 294 So.2d 472, 475 (Miss.1974). Consequently, we specifically find that the proof in this case as to the issue of who owned the funds does not sustain the conviction for embezzlement, and the trial court erred in denying Coleman's motion for a directed verdict.
¶ 17. We further note that Mississippi Code Annotated § 97-17-41(2) (Rev.2000) states in part, "[e]very person who shall be convicted of taking and carrying away, feloniously, the property of a church, synagogue, temple or other established place of worship, of the value of five-hundred dollars ($500) or more, shall be guilty of grand larceny . . ." Thus, Coleman was charged with the wrong crime. The grand jury should have indicted Coleman for the crime of larceny, not embezzlement.
¶ 18. THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT OF CONVICTION OF EMBEZZLEMENT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAYMENT OF RESTITUTION IN THE AMOUNT OF $2,255 IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
KING, C.J., BRIDGES, IRVING, AND BARNES, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND MYERS, P.JJ., AND CHANDLER, J.
GRIFFIS, J., Dissenting.
¶ 19. I respectfully dissent. I would affirm the conviction of W.A. Coleman.
¶ 20. The majority's position is that Mississippi Code Annotated Section 97-23-19 only allows the crime of embezzlement to be committed against an "incorporated company" or a "private person." The majority reasons that Pillow Chapel Missionary Baptist Church is neither. I disagree. Indeed, it is, or may be considered, both.
¶ 21. Section 97-23-19 refers to "incorporated company." We must determine exactly what is an "incorporated company." Title 79 of the Mississippi Code Annotated is titled "Corporations, Associations and Partnerships." I am of the opinion that the use of the term "incorporated *969 company" includes all of the entities that are created by statute under Title 79. We would not doubt that corporations, created under Mississippi Code Annotated Section 79-4-1 et seq., are included in the definition of "incorporated company." Likewise, the following entities would also be included in the definition: business development corporations (Miss.Code Ann. § 79-5-1 et seq.); small business investment companies (Miss.Code Ann. § 79-7-1 et seq.); professional corporations (Miss. Code Ann. § 79-10-1 et seq.); or nonprofit corporations (Miss.Code Ann. § 79-11-1 et seq.). Therefore, I fail to see how an entity created under the same statutes that create nonprofit corporations can be summarily excluded from the definition of "incorporated company," which is contained in a criminal statute.
¶ 22. I am of the opinion that the record is sufficient to establish that Pillow Chapel Missionary Baptist Church is an unincorporated religious society. This entity is created as part of Title 79"Corporations, Associations, and Partnerships," in Chapter 11"Nonprofit, Nonshare Corporations and Religious Societies." Section 79-11-31, titled "Religious societies and associations," provides:
(1) Any religious society, consisting of the members of any particular denomination or congregation, desiring to act as an organized body may do so by associating together and electing or appointing from its membership any number of officers, trustees, or managers, by whatever name known, for the purpose of managing the affairs of the society. Such society or association shall keep a record of its proceedings, which shall show the name of the society, its organization, and the election of the officers, trustees, or managers; but the society so organized at each particular locality shall be a distinct and independent society. Any society so organized may sue and be sued by its society name or appellation, and process may be served on its presiding or chief officer, or secretary, or on the trustees or manager.
Upon the completion of the organization of any such society, the title to the real property theretofore owned by it shall thereupon vest in the society as hereunder organized, and shall not be divested out of the same, or encumbered, except by a deed, deed of trust, or mortgage duly executed under the authority of a resolution adopted by a majority vote of the members present at a meeting duly called for that purpose, at which meeting at least twenty per cent (20%) of the members in good standing of such organized society must be present. The minutes of such meeting shall be entered in the official record book of such society, and the aforesaid resolution shall designate which officers, trustees or managers of such society are to execute such deed, deed of trust, or mortgage.
The provisions of this subsection shall also apply to all real property acquired by any such society after its organization hereunder.
(2) Whenever any number of religious societies or organized bodies or congregations formed under subsection (1) of this section shall decide to act together as an organized body, they may do so in the manner provided in subsection (1) by and through representative elected or appointed for that purpose, and when so organized shall likewise be a distinct and independent society or group, by whatever name called, and subject to sue and be sued and be served with process in the same manner.
Pillow Chapel Missionary Baptist Church is an organized body or congregation that exists by virtue of and under the authority *970 of our corporate statutes. It is, and as such should be considered, an "incorporated company" under Section 97-23-19.
¶ 23. Furthermore, Pillow Chapel Missionary Baptist Church may also be considered an association. An "association" is defined as:
a collection of persons who have joined together for a certain object. At common law, an unincorporated association is not an entity, and has no status distinct from the persons composing it, but is rather a body of individuals acting together for the prosecution of a common enterprise without a corporate charter but upon methods and forms used by corporations. However, although an unincorporated association technically does not exist as a legal entity apart from its members, the legislature may recognize the separate existence of an association by statute. . . .
6 Am Jur 2d, Associations § 1 (1999). By this definition, an association is simply a group of "private persons" who join together for a common purpose. The evidence here was sufficient to establish that Coleman embezzled the funds from and association, which by definition is several private persons. As such, several private persons who make up an association would be included in the statutory definition of "any private person," under Section 97-23-19.
¶ 24. With much respect for the majority, I simply cannot agree with their reasoning and the technical difference that they rely upon. I would affirm the conviction of Coleman. Therefore, I dissent.
LEE AND MYERS, P.JJ., AND CHANDLER, JOIN THIS SEPARATE OPINION.