SMITH v. STATE.

In Banc. Feb. 14, 1949.

(38 So. (2d) 725)

James T. Bridges, for appellant.

**Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**McGehee, C. J.**

The defendant was convicted under an indictment charging him with the murder of one Wardine Pope, a

fifteen year old girl, who received a bullet wound as an innocent bystander when the defendant fired his pistol. The proof on behalf of the State disclosed that the shooting occurred late at night in a room or cafe when more than twenty persons were present; that there had been no quarrel or controversy so far as any of the witnesses knew between the defendant and the deceased, or between the defendant and a stranger known as Pete who jumped out of the way and got behind another person when the defendant drew his pistol from his pocket and fired toward the stranger.

The uncorroborated testimony of the defendant was to the effect that he had started toward the kitchen to get a sandwich when someone threw a bottle and struck him on the back of his leg; that he inquired as to who had thrown the bottle and received no response; that thereupon he heard someone exclaim ''Don't do that Pete'' and that he looked and saw Pete with something in his hand, which was down by his side, and that the latter was advancing toward him; that he then drew his pistol so as to show it to Pete but that in his excitement he accidentally pulled the trigger of the pistol and it fired. In other words, the defense is that in drawing and presenting his pistol the defendant was acting in self-defense but that he accidentally fired it without intending to shoot anyone.

However, the several witnesses on behalf of the State testified that Pete did not have a bottle or anything else in his hand but was talking and laughing until the shot was fired; that there had been no quarrel or words spoken between the defendant and Pete, and the witnesses had not heard anyone say ''Don't do that Pete'' before or at the time the shot was fired.

No one knew the surname of the witness Pete or what became of him, except that he left the scene of the shooting and has not been seen or heard of since that time.

Section 2215, Code of 1942, defines the crime of murder as being: ''The killing of a human being, without the

authority of law, by any means or in any manner : . . . (a) When done with deliberate design to effect the death of the person killed, or of any human being; (b) When done in the commission of an act eminently dangerous to others, and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual; . . ."

██ We are of the opinion that under the usual and customary indictment, such as the one here involved, wherein the crime of murder is charged, there is sufficient evidence in this record to warrant the jury in convicting the defendant of murder without regard to whether clause (a) or clause (b) of the statute hereinabove quoted is the applicable one.

██ It is true that malice is an essential element of murder, but it was held in the case of Criss v. State, Miss., 30 So. (2d) 613, that actual malice is not a necessary ingredient of murder. As a matter of law the element of malice is implied from the deliberate use of a deadly weapon. Cases are cited by appellant to the effect that where all of the facts are in evidence an instruction for the State that malice will be implied from the deliberate use of a deadly weapon is not proper. However, the State did not obtain such an instruction in the instant case. The Court, however, was entitled to consider the law on the question in determining whether or not the issue of murder should be submitted to the jury at all.

Moreover, in the instant case the defendant did not ask for an instruction submitting the issue to the jury as to whether or not the killing was accidental, but, on the contrary, the instructions for the defendant presented for the consideration of the jury only the issue of whether or not the killing was done in necessary self-defense. Neither did the defendant request an instruction which would have submitted to the jury the issue of whether or not the killing was done as a result of culpable negligence on the part of the accused, and which issue may

have entitled the jury to convict the defendant of only the crime of manslaughter if the jury had found that the killing was done merely through culpable negligence.

The State obtained an instruction which afforded the jury the opportunity of convicting the defendant of the crime of manslaughter in the event the jury should have believed beyond a reasonable doubt that the killing was done "by the use of a deadly weapon, without malice, in the heat of passion, without authority of law, and not in necessary self defense," but there was no proof that the shot was fired in the heat of passion; or at least the jury did not so find from all the facts and circumstances. Nor do we think that the verdict is so contrary to the weight of the evidence as to warrant the granting of a new trial.

We are of the opinion that no error was committed by the trial court against the defendant by the granting or refusal of any of the instructions, and that since it was not the duty of the court to grant any instructions not requested in the case there was no reversible error committed on the trial, and the judgment of the trial court in sentencing the defendant to life imprisonment under the verdict of the jury must be affirmed.

Affirmed.