585 So.2d 713 (1991)
Walter CORBIN
v.
STATE of Mississippi.
No. 89-KA-1204.
Supreme Court of Mississippi.
August 21, 1991.
*714 Irene Mikell Buckley, Boyd Buckley & Bateman, Greenville, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PITTMAN, Justice, for the Court:
Walter Corbin was convicted in the Circuit Court of Washington County for the burglary of M & M Grocery in Greenville, Mississippi. He was sentenced to a term of seven (7) years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Corbin appeals to this Court. Finding error in the lower court, we reverse and render.

I.
During the evening hours of September 9, 1988, M & M Grocery in Greenville, Mississippi, was burglarized. The crime was discovered at approximately 5:40 a.m. on September 10, 1988, by Sgt. Lon Pepper of the Greenville Police Department. Entry into the local business had been forced.
Before discovering the M & M Grocery burglary, Officer T.C. Meyers of the Greenville Police Department was on patrol when he noticed a black male walking along Hughes Street. As Officer Meyers approached this person, the man dropped the various items that he was carrying and ran away from the approaching officer. This person was never identified. The items thrown down by this person, however, were identified as the goods that had been stolen from M & M Grocery that same night. These items included several cartons of cigarettes, a coin box, a bag of quarters and a glove. Upon recovery of the above goods, they were immediately processed for fingerprints by detectives from the Greenville Police Department. The stolen merchandise was found within two blocks of M & M Grocery.
Although the suspect was observed by two police officers, no witness was able to identify the person that dropped the stolen goods and ran.
The proprietor of M & M Grocery, Mr. Major Norman of Greenville, testified that he had indeed been burglarized on September 10, 1988. He stated that entry had been gained through the back door of his building by prying open both an iron door and an inner wooden door. Mr. Norman testified that he was able to determine that several items of merchandise had been stolen from his store, including several cartons of cigarettes, change from the video machine and a small change box. The stolen items, according to Norman, totalled around $150.00 in merchandise and cash.
Officer Ken Winter of the Greenville Police Department, a certified fingerprint examiner, testified that on October 7, 1988, he matched four latent fingerprints taken from the cartons of cigarettes stolen from M & M Grocery with the known fingerprints of Walter L. Corbin. At trial, Captain Winter testified that Walter Corbin, "at some point in time", touched the three cigarette cartons from which the fingerprints were lifted.
*715 Based upon the evidence above, Walter Corbin was convicted in the Circuit Court of Washington County for the burglary of M & M Grocery. Aggrieved by that conviction, he appeals to this Court.

II.
Walter Corbin argues on appeal that the lower court was in error when it did not sustain his motions for Directed Verdict and Judgment of Acquittal Notwithstanding the Verdict. These motions, according to appellant, challenged the sufficiency of the State's proof concerning the elements of the crime of burglary. Those elements, under Miss. Code Ann. § 97-17-33 (Supp. 1989), are the unlawful breaking and entering of any structure with the intent to steal or commit a felony therein. Appellant argues that the State wholly failed to prove these elements in the case sub judice. We agree.
When one argues on appeal concerning the legal sufficiency of the evidence supporting a conviction, the standard is as follows:
This Court has often stated the standard of review to be used on motions for a directed verdict:
In passing upon a motion for a directed verdict, all evidence introduced by the State is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for directed verdict must be overruled.
Guilbeau v. State, 502 So.2d 639, 641 (Miss. 1987).
A motion for judgment notwithstanding the verdict, after the jury verdict is returned, essentially tests the legal sufficiency of the evidence that supports a guilty verdict. The standard of review for such a claim is familiar:
Where a defendant has moved for jnov, the trial court must consider all of the evidence which supports the State's case  in a light most favorable to the State. The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences `so considered' point in favor of the defendant with sufficient force that reasonable men could not have found `beyond a reasonable doubt' that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion  that is, evidence of such quality and weight that having in mind the beyond a reasonable doubt burden of proof standard, reasonable fairminded men in the exercise of impartial judgment might reach different conclusions  the motion should be denied.
Parker v. State, 484 So.2d 1033, 1036 (Miss. 1986). Butler v. State, 544 So.2d 816, 819 (Miss. 1989). Walter Corbin maintains that under the facts of this case, and the standards enumerated above, that his conviction cannot stand.
The facts of the case at bar reveal the following: (1) that M & M Grocery was burglarized sometime between closing hours September 9, 1988, and 4:50 a.m. September 10, 1988; (2) that an unidentified black male was seen dropping the items stolen from M & M Grocery and running from a police officer at 4:50 a.m. on September 10, 1988; (3) that the fingerprints of Walter Corbin were found on three of the six cartons of cigarettes recovered by the Greenville Police Department; and (4) that these cartons were generally inaccessible to the public during business hours at M & M Grocery.
These facts, standing alone, do not prove beyond a reasonable doubt that Walter Corbin was the person who unlawfully entered M & M Grocery with the intent to steal merchandise in that business. No fingerprints were recovered at M & M Grocery to place him at the scene of the crime. In fact, the State did not present any evidence placing Walter Corbin at the business at any time. The State will not be required to disprove every hypothesis in a criminal trial. The State here, however, did nothing to focus the possibilities of the *716 fingerprints being concurrent with the robbery.
A decision similar to the case sub judice is McLain v. State, 198 Miss. 831, 24 So.2d 15 (1945). In McLain, the defendant was charged and convicted of the larceny of an automobile on the sole basis of his thumb-print being found on the rear-view mirror of the car. This Court, in ruling that appellant's fingerprint, without more, was not sufficient to uphold the conviction, stated:
In the case before us here the sole and only proof against the appellant consists of a thumb-print on the rear-view mirror, which is conclusive evidence of his identity, and that he had been in the car for some purpose; but evidence of identity and of presence alone is not equivalent to evidence of guilt of a particular crime, especially where several crimes could have been committed as to this car, but as to which a certain charge was made. The thumb-print here was not declaratory, as stated supra, of the nature of the crime, since it was not aided by other evidence identifying the particular crime, and did not exclude other crimes.

No witness testified to having seen appellant in Clarksdale on the night the car was stolen, or on the day it was recovered; and, as stated, there is no evidence in the record of any kind as to when, or under what circumstances, this print was made on the rear-view mirror.

McLain, 198 Miss. at 836-37, 24 So.2d at 16 (emphasis added).
In affirming our earlier decision in McLain, we again announce that a fingerprint as the sole and only proof of guilt is insufficient. Fingerprint evidence must be coupled with some other evidence, especially so when the fingerprint was not found at the crime scene but on some object away from the scene. The State must corroborate this physical evidence with other proof of guilt. Here the State failed in this regard. Therefore, the judgment of the trial court will be reversed, and appellant discharged.
REVERSED AND RENDERED
PRATHER and ROBERTSON, JJ., concur.
SULLIVAN, J., concurs in result only.
BANKS, J., concurs by separate written opinion, joined by DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
HAWKINS, P.J., dissents by separate written opinion joined by ROY NOBLE LEE, C.J., and McRAE, J.
BANKS, Justice, concurring:
I concur in the result reached by the majority. I write separately only to disassociate myself from any implication that the state need disprove less than all reasonable hypotheses consistent with innocence in any case.
The state is required to prove guilt beyond a reasonable doubt as a matter of federal constitutional law, Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and the law of this state. Edwards v. State, 469 So.2d 68 (Miss. 1985). That task requires that the evidence produced be such that we can conclude that a rational, fair-minded jury could find the essential elements of the crime charged beyond a reasonable doubt. Id. Put another way the evidence must be such that a rational jury could exclude all inferences consistent with innocence.
I agree with the majority that evidence that Walter Corbin, at some point, handled the cartons of cigarettes included in the contraband is insufficient, standing alone, to conclude that he committed the burglary in question. The question whether the inference to be drawn from the possession of recently stolen property is sufficient to support a conviction of the criminal act by which the property was removed from its rightful owner has received no little attention from the federal courts. See, Cosby v. Jones, 682 F.2d 1373 (11th Cir.1982) and cases cited therein. The Cosby court noted that "there is widespread agreement that the bare inference of theft from possession is insufficient for conviction without corroborating circumstances or evidence." Id. at 1380.
*717 In Cosby, the court reversed a conviction based solely on the fact that the defendant, who lived in the same apartment complex as the burglary victim, was pawning goods taken in the burglary within a day or two of the burglary. The defendant offered an explanation that he had purchased the camera and lens from another person and an alibi for the time of the burglary. Noting that the evidence must be viewed in the light most favorable to the state, the court refused to rely on this explanation, crediting the convicting jury as having disbelieved it. Nevertheless, the court found the evidence insufficient to allow a rational jury to conclude beyond a reasonable doubt that Cosby had committed the burglary.
In a case more similar to the one at bar, the United States Court of Appeals for the Fifth Circuit has had an opportunity to speak to this issue. Clark v. Procunier, 755 F.2d 394 (5th Cir.1985), involved a burglary wherein a safe was pulled halfway out the door of the burgled premises and several inspection stickers were stolen. A month later, Clark's wallet was found on the streets of a town seventy-five miles away and the wallet contained two of the stickers. Clark offered testimony that his wallet had been lost sometime earlier, but after the date of the burglary. More importantly, for present purposes, a palm print was found on the part of the safe sticking outside the door of the burgled premises, and that print was identified by two experts as matching Clark's. The court reversed the conviction reasoning as follows:
Interpreting the evidence most favorably to the prosecution, we must construe it as establishing that the print was Clark's and that the safe was lying partially inside and partially outside the building. But the doorway in which the safe was lying was adjacent to a parking lot, and the state concedes that "the palmprint evidence alone does not negate the possibility that Petitioner placed his print on the safe after the burglary, either during a theft of the stickers or as an innocent passerby." Even if he construed the evidence most favorably to the state, a reasonable juror should have doubted that the left side of the safe was in the building.
* * * * * *
Entry into the building was not proved and cannot on the record be inferred.
Id. at 396.
Here Corbin could have picked up the goods after they were dropped by the burglar and before they were dropped by the individual seen by the officer; the burglar or some other person may have offered them to Corbin for sale or had him handle them for some other reason; or Corbin's prints may have gotten on the cartons of cigarettes even before they were delivered to the store. The state asks that we draw an inference from the fingerprints, first that Corbin had possession after the burglary and then, from that inference, that he broke into the store. That inference upon an inference is too tenuous to rise to the level of certainty necessary to convict one of a crime.
DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ., join this opinion.
HAWKINS, Presiding Justice, dissenting:
Because there was sufficient evidence to support Corbin's conviction, I would affirm, and respectfully dissent.

APPELLATE REVIEW OF CIRCUMSTANTIAL EVIDENCE
Under settled case law in a circumstantial evidence case, the accused is always entitled to an instruction that the jury must acquit unless they are convinced of his guilt beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis than that of guilt.
Where there is circumstantial evidence of guilt, however, it is the function of the jury, not the trial judge or the appellate court, to determine whether or not there is a reasonable hypothesis of innocence. This is peculiarly within the province of the jury. When there is strong circumstantial evidence of guilt, the Court does not look *718 over the jury's shoulder to try and ascertain whether there is some hypothesis of innocence when the jury has found none.
This Court stated in Johnson v. State, 23 So.2d 499, 500 (Miss. 1945):
It was long ago held by this Court in the case of Browning v. State, 33 Miss. 47, citing Cicely v. State, 13 Smedes & M. 202, 211, and the principle has been uniformly adhered to since that time, that the sufficiency of circumstantial evidence is peculiarly for the determination of the jury, "because it is always solemnly to be weighed and acted upon by their understanding and consciences, and is, from its very nature, the subject of inferences and conclusions in their minds," and that "a verdict, therefore, found on circumstantial evidence, will always be permitted to stand unless it is opposed by a decided preponderance of the evidence, or is based on no evidence whatsoever."
Also, Burrill v. State, 328 So.2d 334 (Miss. 1976).
Mississippi follows the general law. State v. Donckers, 200 Wash. 45, 93 P.2d 355, 357 (1939):
Whether circumstantial evidence tending to connect appellant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of appellant's guilt was a question for the jury, and not for the court.
Buenoano v. State, 478 So.2d 387, 390 (Fla.App. 1 Dist. 1985):
But the question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, the verdict will not be reversed on appeal.
State v. Allen, 335 So.2d 823, 826 (Fla. 1976):
Circumstantial evidence, by its very nature, is not free from alternate interpretations. The state is not obligated to rebut conclusively every possible variation, however, or to explain every possible construction in a way which is consistent only with the allegations against the defendant. Were those requirements placed on the state for these purposes, circumstantial evidence would always be inadequate to establish a preliminary showing of the necessary elements of a crime.
Also, Whaley v. U.S., 141 F.2d 1010, (5th Cir.1944), cert. den. 323 U.S. 742, 65 S.Ct. 46, 89 L.Ed. 595 (1944); Payne v. State, 424 So.2d 722 (Ala.Cr.App. 1982); Coleman v. State, 394 So.2d 82 (Ala.Cr.App. 1981); Mauldin v. State, 376 So.2d 788 (Ala.Cr. App. 1979); People v. Muhly, 15 Cal. App. 416, 114 P. 1017 (1911); Creech v. Commonwealth, 270 Ky. 662, 110 S.W.2d 269 (1937).
The above citations are just a smattering of the general law which can be found in the West Digests under "Criminal Law," Key No. 741(6).
When there have been sufficient facts introduced into evidence from which a jury can reasonably conclude the accused guilty, he is nevertheless entitled to have that jury also told that they must acquit unless in their own minds they can exclude every reasonable hypotheses except that of guilt.
But he is not entitled to have the trial judge or this Court make the same inquiry.[1] Whether, under those circumstances, there exists some reasonable hypothesis of innocence is within the province of the jury.

THE EVIDENCE
The record is undisputed on the following facts:
(1) A man named Major Norman owned and operated M & M Grocery, a small neighborhood store, at 502 Elm Street in Greenville.
(2) Between his closing hours on Friday night, September 9, 1988, and the next morning, September 10, the back door of his store was broken open and his store burglarized. Several cartons of cigarettes were missing from under the counter, the video machines had been broken and $60-$70 in change *719 taken out, and a small change box that he kept in the store was also missing.[2]
(3) Shortly before 5:00 a.m. that Saturday morning, T.C. Myers, a police officer in Greenville was on patrol, and just over two blocks from the store observed a person on Hughes Street walking towards the levee and away from the direction of the store. The headlights on the patrol car were off. As the car approached this individual, he looked back over his shoulder. The officer speeded the car to see who the person was, and the person dropped what he was carrying and ran away. The officer recognized only that it was a black male.
(4) Myers inspected what had been dropped. There were some cartons of cigarettes, a sack containing quarters that had broken open and some of the quarters scattered, and a coin box, and a glove. Only the quarters were in a sack. None of the rest was in a sack or container. (R.65)
Q. All right. In what proximity to the cigarettes and the coin box was the glove?
A. Oh, it was right there with  you know  when the man run, he just  everything that he had in his arms he just threw down right there. And the sack with the quarters  there was a paper sack of quarters busted and the change run out of it. This glove was laying right there and these cartons of cigarettes was lying there and this box. (R.59)
The quarters were in a small paper sack, a little larger than a candy sack. Myers alerted other officers as to a probable burglary in the vicinity.
(5) Recovered were two cartons of Kool, a carton of Salem, and a carton of Bensen and Hedges brand cigarettes, the coin box, the sack of quarters and some of the spilled change. Norman testified that the cartons of cigarettes were what he noticed were missing under the counter (that he knew his cigarette inventory), and that the coin box was from his store.
(6) Within an hour after Myers saw the man run off, other officers came to the scene, and the loot was dusted for fingerprints. Fingerprints were found on each of the cartons of Kool and on the Salem brand cigarettes.
There can be no real argument as to the following facts:
(1) Norman's store was burglarized some time during the night or early morning hours.
(2) Around his counter there was disarray.
(3) An unidentified black man was seen carrying the stolen property from his store, approximately two blocks distance, and walking away from the store.
(4) When the man saw the officer, he ran.
Surely, there can be no argument but that a jury was entitled to conclude from this evidence that the man seen carrying the stolen loot was in fact the burglar.
If a jury does not have the right to conclude that a man in possession of freshly stolen loot who, when he sees a law enforcement officer, drops it and runs, was in fact the thief, that this does not make a jury issue on guilt, then we have departed the world of common sense.
The only question is the identity of this man.
Therefore, the core question in this case is whether or not a jury issue was made on the fleeing man's identity.
*720 This brings us to the next evidence in the record.
There is no dispute in the record but that:
(1) Corbin's left ring finger and left little finger prints were on one of the cartons of cigarettes,
(2) his left thumb print on another carton of cigarettes, and
(3) his right ring finger print on another carton of cigarettes.
Three separate cartons of these cigarettes had his fingerprints, all different. These were the only fingerprints lifted off the recovered property.
And whose fingerprints were these?
Corbin's.
Why, then, was not a Washington County jury entitled to conclude that the man carrying the loot was Corbin?
If this did not make a circumstantial case calling for some kind of defense, what would?
Suppose Officer Myers had testified, "Yes, I recognized the man who dropped the merchandise and ran. It was Corbin."? Could it then be maintained that at least a jury issue was not made on whether or not Corbin was indeed the man? Of course not.
Well, what about those fingerprints on three separate, loose cartons being carried by Mr. X by hand? No other person's fingerprints were found on the cartons or other merchandise.
To me this is stronger evidence than eyewitness identification. An eyewitness may be mistaken. There is no mistake about those being Corbin's fingerprints on the three cartons. Fingerprints constitute the "strongest kind of evidence." Stoppelli v. U.S., 183 F.2d 391, 394 (9th Cir.1950), rt denied, Stoppelli v. U.S., 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950); the "use of fingerprints is an infallible means of identifications." Murphy v. State, 184 Md. 70, 40 A.2d 239, 246 (1944).
If somebody else burglarized the store and stole the merchandise, why weren't the other fingerprints on the cartons? If some other person than Corbin was carrying the loot, why weren't his fingerprints on the loot?
If there were in fact some innocent explanation, if Corbin's fingerprints got on those cartons in some manner other than his breaking in the store and stealing them, he is the one person who can give it. Put slightly differently, if there is an innocent explanation for Corbin's fingerprints on the cigarette cartons, the only person in the entire world we absolutely know could give it is Corbin.
The State should not be required to rule out some other explanation of innocence when Corbin is the only person we know who can furnish it. And that's not the law.
The State presented a strong case based upon circumstantial evidence.

FAILURE TO EXPLAIN
An accused has a constitutional right not to take the stand in his own behalf. He is presumed innocent until proof is offered to the contrary.
But, there is not a thing in the world wrong with a rule of law which says that when certain facts are proved, which only the defendant can explain, it is up to him to offer some explanation. Otherwise, the jury has the right to find him guilty.
We do that in murder prosecutions. A and B go into a room together. A shot is fired, and A is seen walking out with a smoking pistol. B is dead, a bullet through his head.
The law presumes A murdered B unless he offers some rational explanation. Malice is presumed from a killing with a deadly weapon. Blanks v. State, 547 So.2d 29, 33 (Miss. 1989); Russel v. State, 497 So.2d 75, 76 (Miss. 1986); Stokes v. State, 240 Miss. 453, 477, 128 So.2d 341, 350 (Miss. 1961); Hughes v. State, 207 Miss. 594, 42 So.2d 805, 807 (1949); Smith v. State, 205 Miss. 283, 294, 38 So.2d 725, 726 (1949); see cases cited "Homicide," West Key No. 146.
In Tuttle v. State, 252 Miss. 733, 737, 174 So.2d 345, 346-47 (1965), this Court stated:
Besides, the appellant did not even testify, nor did he offer evidence in conflict *721 with the state's evidence. The prohibition against adverse comment and inference does not protect a defendant from the probative force of the evidence against him. Dealing with the failure of a defendant to testify, 1 Wharton's Criminal Evidence, sec. 146 at page 277 (12th ed. 1955), well says: "If a defendant does not attempt to rebut incriminating facts he cannot, merely by remaining silent, escape the natural and reasonable inference deducible from such facts. For instance, if in a case of larceny the theft and unexplained or unsatisfactorily explained recent possession of the stolen property of the accused are shown, he cannot avoid the natural inference, deducible from such facts, that he is the thief, by failure or refusal to testify."
See also: McGilvery v. State, 497 So.2d 67, 68 (Miss. 1986); Rush v. State, 301 So.2d 297, 300 (Miss. 1974).
In U.S. v. Cotter, 425 F.2d 450, 452 (1st Cir.1970), the First Circuit Court of Appeals held:
The defendant argues that if he had taken the stand he might have testified that he himself had asked Mitchell for permission, and that it was refused, and that for the jury to deny him the benefit of that assumption in effect would violate his Fifth Amendment right. This is a total misconception of the amendment. The Fifth Amendment prevents the drawing of unfavorable inferences from the failure to testify; it does not prevent the drawing of affirmative inferences, or serve to rebut inferences that arise independently from other circumstances, unconnected with the defendant's failure to testify. [Emphasis added]
In U.S. v. Parness, 503 F.2d 430, 437 (2nd Cir.1974), the Second Circuit Court of Appeals stated:
As we recently stated in United States v. Frank, 494 F.2d 145, 153 (2 Cir.1974):
[T]he defendants were not required to testify or to present any case at all, and the jury could not permissibly draw an adverse inference simply from their failure to take the stand. But the self incrimination clause does not elevate a defendant's silence ... to the level of convincing refutation. When a defendant has offered no [credible explanation], it may be reasonable for a jury to draw inferences from the prosecution's evidence which would be impermissible if the defendant had supplied a credible exculpatory version. [Emphasis added]
In People v. McClindon, 54 Ill.2d 546, 301 N.E.2d 290, 293 (1973), cert. denied, McClindon v. Illinois, 415 U.S. 992, 94 S.Ct. 1593 (1974), the Supreme Court of Illinois held:
The defendants had an opportunity during the trial to explain their conduct just as any defendant has an opportunity to explain, rebut or contradict any evidence presented against him. In the absence of such an explanation, rebuttal or contradiction, the evidence stands unchallenged before the jury. This court has stated concerning conduct similar to that involved in this case: "In the absence of explanation, such conduct is not consistent with that of an innocent person similarly situated... ."
The Seventh Circuit Court of Appeals in U.S. v. Clark, 776 F.2d 623, 627 (7th Cir.1984), cert. denied, Clark v. United States, 470 U.S. 1006, 105 S.Ct. 1363, 84 L.Ed.2d 384 (1985), stated: "But, the privilege of self-incrimination does not preclude the trier of the facts from drawing an adverse inference if justified by the facts." Also, Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965): "What the jury may infer, given no help from the court, is one thing." (And entirely different from the court or prosecution commenting upon it.)
"It is equally clear that an accused cannot avoid the natural and reasonable inferences deducible from proved facts merely by remaining silent or by declining to become a witness." 22 A C.J.S. Criminal Laws, § 593, p. 355.
In Moore v. U.S., 271 F.2d 564, 568 (4th Cir.1959), the Court held:
In a criminal case the accused is protected, at every stage of the trial, with a presumption of innocence and until he is *722 proven guilty beyond a reasonable doubt by proper and competent evidence. No inference of guilt can be drawn from the mere fact that the accused did not testify in his own behalf. These are fundamental principles which require no citation of authority. But other principles have not been overlooked or disregarded in reaching our decision. Circumstantial evidence may support a verdict of guilty, though it does not exclude every reasonable hypothesis consistent with innocence. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. If it be sufficient to support an inference of guilt and the defendant fails to offer a reasonable explanation consistent with innocence, such failure may be considered by the trier of fact. Wilson v. United States, 1896, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Jenkins v. United States, 4 Cir., 1932, 58 F.2d 556. It is not necessary, in appraising the sufficiency of the evidence, that this court be convinced beyond a reasonable doubt of the guilt of the defendant. Bell v. United States, 4 Cir., 1950, 185 F.2d 302. The question is whether the evidence, construed most favorably for the prosecution, is such that a jury (or trial judge) might find the defendant guilty beyond a reasonable doubt. Bell v. United States, supra; United States v. Brown, 2 Cir., 1956, 236 F.2d 403; Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391.
Also, State v. Clay, 29 Ohio App.2d 206, 280 N.E.2d 385, 388 (1972):
Where the prosecution makes a probable case on an issue as to which a defendant has a peculiar knowledge of the facts and may easily prove them, an inference arises that the truth is with the prosecution. Williams v. United States, 170 F.2d 319 (5th Cir.1948), cert. denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442.
In United States v. Ragland, 306 F.2d 732, 736 (4th Cir.1962), cert. denied, Ragland v. United States, 371 U.S. 949, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963), the Fourth Circuit Court of Appeals in citing and quoting from Moore, observed:
It is noteworthy in this case that neither defendant testified, nor offered any evidence at all, to explain their possession of this large quantity of sugar.
* * * * * *
Nevertheless, protection of those fundamental rights (Fifth Amendment rights not to testify) does not mean that the failure of the defendant in a criminal case to explain highly suspicious circumstances, must be entirely disregarded by the trier of fact.
In Walker v. United States, 301 F.2d 94, 97 (5th Cir.1962), the Fifth Circuit Court of Appeals, citing Acuna v. United States, 74 F.2d 359, 360 (5th Cir.1934), with approval, noted that a presumption "merely places the burden upon him (the defendant) as to matters peculiarly within his knowledge." [Emphasis added][3]

----
The significance the majority attaches to Corbin's fingerprints is reminiscent of an episode in Mark Twain's book, A Connecticut Yankee in King Arthur's Court, where the hero, Hank, must fight two heavily armored knights in a tournament.
Rather than encumber himself or his nimble horse in heavy metal, Hank dons his "long handles" and readies himself for the fray. He initially plans to lasso his opponents as they lope past and do them no serious harm, but Merlin steals his rope. Hank has prepared himself for this eventuality, however. He has two .45 caliber revolvers in good working order.
As each knight approaches, he whips out a revolver and fires. Wham! A knight is on the ground. Stone dead.
The curious onlookers cannot understand his being dead. They see nothing of any significance about the dead knight. Well, there is a little hole in the chain metal on his chest, but that is meaningless.
The majority attaches the same importance to these three little sets of Corbin's fingerprints.
*723 I apprehend my esteemed colleagues have done the State an injustice.
I would affirm.
ROY NOBLE LEE, C.J., and McRAE, J., join this opinion.
NOTES
[1] Which is precisely what the robust imagination of the concurring opinion, p. 717, does.
[2] Lon Pepper of the Greenville Police Department, who first located the burglarized store, testified:

A. As I stated, the point of entry was on the east side of the building with the iron door pried open. It's a gate-type door. And, the rear door  interior  or going into the interior of the store had been pried open. That enters a back room of the store.
Once I got inside the store I observed there was some disarray of the cigarettes behind the counter, some paperwork from the store was on the floor. It was obvious that a person had broken into the building and had possibly taken some object, at which time we tried to notify the owner. (R.44)
[3] This is a burden which the concurring opinion generously removes.