IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00885 COA

BOB WASHINGTON APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. HON. JOHN B. TONEY

COURT FROM WHICH APPEALED: RANKIN COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: JAMES A. BOBO

ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: JOLENE M. LOWRY

DISTRICT ATTORNEY: RICK MITCHELL

NATURE OF THE CASE: CRIMINAL - MURDER

TRIAL COURT DISPOSITION: SENTENCED TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.

MOTION FOR REHEARING FILED:9/25/97

CERTIORARI FILED: 12/11/97

MANDATE ISSUED: 4/1/98

BEFORE BRIDGES, C.J., HINKEBEIN, AND KING, JJ.

HINKEBEIN, J., FOR THE COURT:

Bob Washington was convicted in the Rankin County Circuit Court of murder. Washington was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Washington appeals to the Court on the following grounds:

I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE, A NEW TRIAL.

II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO STRIKE THE SPECIAL VENIRE.

III. THE TRIAL COURT ERRED IN ALLOWING A LAY WITNESS TO OFFER OPINION AS TO WHETHER THE APPELLANT ACTED IN SELF-DEFENSE.

We find the issues raised by Washington do not warrant a reversal of his conviction. Accordingly, we affirm the judgment of the trial court.

FACTS

In December 1993, Bob Washington owned and operated a small business known as Action Roofing out of a boathouse near his home in the Robinhood Community of Rankin County. On the day he died, Keith Puckett had been working for Washington nine days. The morning of the incident, Puckett and a co-worker, Joe Mitchell, met with their boss. Both men asked Washington when they

could expect to be paid. Washington reminded the pair that they were not due to be paid until the next day. He nonetheless suggested that he might have something to tide them over. He told them to check with him later. Mitchell and Puckett then left for a roofing project in Meridian. Thereafter, Washington directed his bookkeeper, Debra Wigley, to deposit additional funds in his bank account. When Puckett and Mitchell returned to Rankin County, Wigley wrote two checks. One check was intended for Mitchell and the other for Puckett; however, both were made to Mitchell as Puckett had no identification with which to get the check cashed. Mitchell was informed of the recent deposit. But neither he nor Puckett apparently understood that the funds would not be available for immediate withdrawal. The two men then attempted, unsuccessfully, to cash the checks.

Puckett grew angry. He insisted on returning to Washington's boathouse/business. Mitchell drove. Upon their arrival, Mitchell remained in the vehicle searching for the checks, which the pair had misplaced in transit. Puckett found Ricky Ballard and Washington in the boathouse and set about giving Washington a piece of his mind. Although he never threatened to kill Washington, Puckett did threaten to "kick his ass." He refused to leave until he got his money. As the argument escalated, Mitchell, still unable to locate the checks, stepped inside the door. Both he and Ballard watched in silence. Washington remained relatively calm until Puckett called him a "cheap, chiseling son of a bitch." Upon hearing those words, Washington pulled out his .44 magnum handgun. *Only then* did Puckett make any threatening moves toward Washington. He picked up a chair and raised it above his head as if he might swing it at Washington. Washington fired the gun. Puckett dropped the chair and crouched on the floor. He said he was going. At that moment Mitchell retreated, rounding the corner of the building before stopping to look back. Meanwhile, Washington moved closer to Puckett. Standing over the already wounded man, he fired again. At this point, Ballard ran into the bathroom and locked the door. Puckett exited the building and fell onto the grass just outside the door. From within the structure, Washington shot him *yet again*. Puckett only flinched. Then Washington walked beside Puckett's lifeless body and kicked him in the face, shot him *again,* and spit on him. Mitchell, who was still watching unbeknownst to Washington, slipped away to call the Rankin County Sheriff's Department.

After the shooting, Ballard and Wigley viewed Puckett's body lying in the grass. Neither noticed anything in his hands. However, the paramedics (after Washington had been left alone with the body) subsequently discovered a knife clutched in Puckett's hand. The knife was Washington's and usually remained on a table inside.

Bob Washington was thereafter indicted by the Rankin County Grand Jury and charged with the crime of murder. At trial the jury returned a guilty verdict and Washington was sentenced to a term of life imprisonment. It is from this conviction that Washington brings this appeal.

I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE, A NEW TRIAL.

Following his conviction, Washington moved for judgment notwithstanding the verdict or in the alternative, a new trial. His motion contained a cursory claim that the verdict was contrary to the law and the weight of the evidence. Here, he elaborates. Washington argues that the facts support at best a conviction for manslaughter, not murder. On this basis, he requests a new trial. The State contends

that there is in the record substantial evidence of such quality and weight that reasonable jurors in the exercise of impartial judgment might have found Washington guilty of murder. We agree with the State.

The motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). Where the defendant has moved for JNOV, the trial court must consider all of the credible evidence consistent with the defendant's guilt. *McClain,* 625 So. 2d at 778. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from this evidence. *Id.* This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *Wetz v. State*, 503 So. 2d 803, 808 n.3 (Miss. 1987).

Only a slightly greater quantum of evidence favoring the State is necessary to withstand a motion for new trial. As distinguished from the motion for JNOV, the defendant here is asking that the jury's verdict be vacated on grounds related to the weight of the evidence, not its sufficiency. *May v. State*, 460 So. 2d 778, 781 (Miss. 1985). The Mississippi Supreme Court has repeatedly held that the jury bears sole responsibility for determining the weight and credibility of evidence. *May,* 460 So. 2d at 781. Therefore, we are without the power to set aside a guilty verdict unless we are convinced it is the result of prejudice, bias, fraud, or is manifestly against the weight of the credible evidence. *Pearson v. State,* 428 So. 2d 1361, 1364 (Miss. 1983). We will reverse and order a new trial only upon a determination that the trial court abused its discretion, accepting as true all evidence favorable to the State. *McClain*, 625 So. 2d at 781.

With regard to Washington's claim that the facts do not support a conviction of murder, the use of a deadly weapon in the killing of a human being raises a presumption of malice which characterizes a homicide as murder. *Dickens v. State*, 408 Miss. 69, 92, 43 So. 2d 366, 373 (1949). A killing with a deadly weapon may be explained by the accused or eyewitnesses as an accident or justified as having been committed by the accused acting in lawful self-defense or mitigated manslaughter. *Nicolaou v. State*, 534 So.2d 168, 172 (Miss. 1988). However, without such an explanation, the presumption stands. *Dickens*, 208 Miss. at 92, 43 So. 2d at 373.

Washington's exhibition of a .44 magnum revolver even before any advances were made against him suggests malice. *See Russell v. State,* 497 So. 2d 75, 76 (Miss. 1986) (citing *Fairchild v. State*, 459 So. 2d 793 (Miss. 1984); *Smith v. State*, 205 Miss. 283, 38 So. 2d 725 (1949)); *see also Brown v. State*, 98 Miss. 786, 54 So. 305 (1911). Washington relies upon *Dedeaux v. State*, 630 So. 2d 30 (Miss. 1993), where an individual was charged with murder, yet the overwhelming proof supported only manslaughter. Failure to instruct the jury regarding the lesser-included offense supported a finding of manifest injustice. *Dedeaux,* 630 So. 2d at 33. As a result, the Mississippi Supreme Court ordered re-sentencing. *Id.* Washington argues that he, like Dedeaux, overcame the inference of malice with his claim of justification. However, this jury was fully and correctly instructed upon the applicable principles of law. In addition, we can find no basis for justification of the killing which would allow the jury to return a verdict for the lesser-included offense.

Washington's claim of self-defense was fully and fairly presented and was also resolved against him. *See Smith v. State*, 463 So. 2d 1102, 1103 (Miss. 1985); *Rush v. State*, 278 So. 2d 456 (Miss. 1973).

The possibility that Puckett could have grabbed the knife from the table and threatened Washington with it seems unlikely. Ballard testified that, up to the point at which he hid in the restroom, Puckett definitely had no knife. Mitchell testified that after the two emerged from the building, he saw no knife in Puckett's hand. For Puckett to have threatened Washington he must have (1) lifted himself from the floor after being shot twice, (2) moved past Washington, and (3) grabbed the knife within a span of only a few seconds. Additionally, both Ballard and Wigley viewed Puckett's body immediately following the incident yet prior to the arrival of paramedics and law enforcement personnel; neither saw a knife.

Reasonable and fair-minded jurors might well have found Washington guilty of murder beyond a reasonable doubt based on these facts. As a result, this assignment of error is without merit.

II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO STRIKE THE SPECIAL VENIRE.

Washington claims to have been denied his right to an impartial jury and due process of law. In support of his contention, he cites Article 3, Section 26 of the Mississippi Constitution of 1890 and Amendments VI and XIV of the United States Constitution. He also argues that black citizens in Rankin County were denied their right to serve as jurors "in numbers approaching their statistical occurrence in the community." The State asserts that Washington is procedurally barred from raising this alleged error on appeal. We agree with the State.

It is fundamental to the principles of appellate review that a trial judge may not be put in error on a matter which was not presented to him for decision. *Holland v. State*, 587 So. 2d 848, 868 (Miss. 1991) (citing *Pruett v. Thigpen*, 665 F. Supp. 1254, 1262 (N.D. Miss. 1986); *Read v. State*, 430 So. 2d 832, 838 (Miss. 1983); *Ponder v. State*, 335 So. 2d 885, 886 (Miss. 1976); *Stringer v. State*, 279 So. 2d 156, 157-58 (Miss. 1973)). Generally, this means that the matter must be presented to the trial court in such a form that the trial judge has the opportunity to consider it with full knowledge of the respective contentions of the parties. *House v. State*, 445 So. 2d 815, 819 (Miss. 1984). Therefore, the presentation of specific basis for objection necessarily operates as a waiver of all other grounds. *Conner v. State,* 632 So. 2d 1239, 1255 (Miss. 1993); *see also McGarrh v. State*, 148 So.2d 494, 506 (1963) (holding that objection cannot be enlarged before appellate court so as to embrace omission not complained of at trial).

A special venire was ordered and drawn in this case. Of 150 persons drawn, 47 were seated. This group's racial make-up was 89% white. However, Rankin County is only 85% white. As a result, Washington moved to strike the panel. Defense counsel cited Article III, Section 26 of the Mississippi State Constitution and the Fourth Amendment of the United States Constitution. The trial court denied the motion. Defense counsel mentioned neither the Sixth nor Fourteenth Amendments. Moreover, he never uttered the words "equal protection."

The trial judge had no opportunity to consider possible Sixth or Fourteenth Amendment violations. *See Holland*, 587 So. 2d at 868, n.18; *Conner*, 632 So. 2d at 1255. As a result Washington waived appeal of these issues. This assignment of error is without merit.

III. THE TRIAL COURT ERRED IN ALLOWING A LAY WITNESS TO OFFER OPINION AS TO

WHETHER THE APPELLANT ACTED IN SELF DEFENSE.

It is elementary that to preserve alleged error for review there must be a contemporaneous objection. *King v. State*, 615 So. 2d 1202, 1205 (Miss. 1993) (citing *Smith v. State*, 530 So. 2d 155, 161-62 (Miss. 1988)). As previously stated, the basis for an objection cannot be enlarged by this court to address a complaint not raised at trial. *Conner*, 632 So. 2d 1239. Moreover, if an appellant does not raise an issue in the pleadings, the transcript, or the rulings, he absolutely must raise it within his motion for new trial. If not, he is procedurally barred from raising the error on appeal. *Ross v. State*, 603 So.2d 857 (Miss. 1992).

Defense counsel objected to the form of the question in issue, not the substance. During the trial, the assistant district attorney asked Mitchell if, based on his observations, Washington acted in self-defense. Mitchell replied "no." While defense counsel repeatedly objected to the prosecution's leading of Mitchell in the moments prior to this question, no objection whatsoever followed it. No mention of this exchange appears in Washington's motion for JNOV/new trial. Washington merely alleged: "The Court erred in overruling all objections made by the Defendant and sustaining all objections made by the State." Such an assertion is woefully inadequate. Washington never presented this particular matter to the trial court. We may not now assign error to a decision the lower court had no opportunity to make. Therefore, we have no choice but to affirm without reaching Washington's substantive argument.

**THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. HERRING, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PAYNE AND SOUTHWICK, JJ.**

IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00885 COA

BOB WASHINGTON APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

HERRING, J., CONCURRING:

While I agree with the ruling of the majority, I respectfully write separately to voice my disagreement with the rationale utilized in dealing with two issues raised by the Appellant. For the sake of clarity, the issues raised by Washington will be addressed in the order in which they appear in the majority opinion.

I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE, A NEW TRIAL.

I wholly agree with the majority's opinion on this issue.

II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO STRIKE THE SPECIAL VENIRE.

As to this issue, I am concerned by the fact that the Appellant objected to the special venire on state and federal constitutional grounds, yet he failed to cite the proper amendment to the United States Constitution in support of his objection. While I certainly agree with the Majority that an objection at trial on specific grounds normally serves as a waiver of all other grounds for objection, I am not convinced that this rule applies in the case *sub judice*.

At trial, Washington moved the court to strike the special venire. In making this motion, defense counsel stated:

We would further object, Your Honor, in that, as I understand it, Rankin County, Mississippi, is somewhere around 85 percent white. From the count previously stated in the record, there are only black - - 5 black members of this panel. 5 into 47 is less than 190, which is below the 15 percent that make up the composition of Rankin County, Mississippi.

We would ask that this panel be stricken, Your Honor, and that a new one be brought under Article III, Section 26 of the Mississippi State Constitution and by *Fourth* Amendment to the United States Constitution. (emphasis added).

By his objection, Washington raises an equal protection issue pursuant to the Fourteenth Amendment to the United States Constitution. Although it is true that Washington did not cite the Fourteenth Amendment in support of his objection, I would hold that it is clear from the objection stated above that a denial of "equal protection of the laws" was the true basis of the objection. It appears likely that defense counsel simply misspoke when he cited the Fourth Amendment to the United States Constitution instead of the Fourteenth Amendment, since neither his objection nor the facts of the case have anything to do with an illegal search or seizure. Thus, given the gravity of the crime charged, I would hold that this issue was properly preserved by Washington for appellate review.

However, looking to the substance of Washington's claim, I would also hold that the argument that Washington was denied equal protection of the law because of the trial court's failure to strike the special venire has no merit. A challenge to a venire on racial composition grounds must satisfy the standard set forth by the United States Supreme Court in *Castaneda v. Partida,* 430 U.S. 482, 494 (1977). The court further refined this standard into a three-part test in *Duren v. Missouri*, 439 U.S. 357 (1979). In *Duren*, the court held that in order to prevail on this issue, an appellant must prove (1) that the group alleged to be excluded is a distinctive group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this under-representation is due to a systematic exclusion of the group in the jury-selection process. *See Lanier v. State*, 533 So. 2d 473 (Miss. 1988) (adopting *Duren); Simon v. State,* 688 So. 2d 791, 805 (Miss. 1997) (following *Lanier).*

Furthermore, the Mississippi Supreme Court has adopted the United States Supreme Court's reasoning in *Taylor v. Louisiana,* 419 U.S. 522 (1975), where the court held that "[i]t should be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." *Taylor,* 419 U.S. at 538. (quoted in *Harris v. State*, 576 So. 2d 1262, 1263 (Miss. 1991)).

Applying the test set out in *Castaneda* and its progeny to the case *sub judice*, there is no doubt that African Americans are a distinct group in the community. Therefore, the first requirement of the *Duren* test is easily satisfied. On the other hand, when looking to the second and third requirements, it seems quite clear that a jury pool of which slightly over ten percent are African Americans, is reasonable and fair in relation to the African American population of Rankin County, Mississippi, which was approximately fifteen percent of the total population at the time of trial.[1] Absent some

specific showing of systematic exclusion, I would affirm the trial court's ruling on this issue.

III. THE TRIAL COURT ERRED IN ALLOWING A LAY WITNESS TO OFFER OPINION AS TO WHETHER THE APPELLANT ACTED IN SELF-DEFENSE.

While I agree with the Majority's ruling on this issue, I would affirm for a slightly different reason. I would simply hold that this issue is barred because it was waived once Washington objected to the State's question as leading, without raising any objection to the question on the grounds that an improper opinion of a lay witness was requested. As the majority aptly points out, the presentation of a specific basis for objection necessarily operates as a waiver of all other grounds for objection. *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993).

**PAYNE AND SOUTHWICK, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

1. The only evidence presented at trial concerning the racial composition of the citizens of Rankin County was the statement of counsel for the appellant. No data or affidavits or other evidence was presented to verify his statement. For purposes of this opinion only, I will accept the statements of counsel as to the county's racial composition.