# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-01425-SCT

*WALTER L. HODGE a/k/a PIMP C POPCORN*
*v.*
*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/10/2001 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | ELEANOR JOHNSON PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/15/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/5/2002 |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Walter L. Hodge was indicted for murder in violation of Miss. Code Ann. § 97-3-19 (1)(a), as amended, for the shooting death of Anthony Thomas. After a two-day trial, a jury convicted Hodge of murder and sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections. For the reasons that follow, we affirm Hodge's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 20, 2000, Walter L. Hodge, Anthony Thomas, and Archie Kelley were congregated at Kelley's grandmother's house in the town of Edwards, Second Judicial District of Hinds County, Mississippi. Believing that Thomas was a "snitch," Hodge lured Thomas to a nearby field. While in the field, the three headed toward a pond whereupon Hodge shot Thomas. Three shots were fired with two shots hitting Thomas. According to Dr. Steven Haynes, the pathologist on the case, the first gunshot struck Thomas in the back slightly to the left of the midline and lodged within the space that holds the left lung. The

second gunshot grazed the back left side of Thomas's head, coursing through his ear, and then grazing the back of his left cheek. The autopsy concluded that the cause of death was the gunshot wound to the back leading to an accumulation of blood in the chest cavity thereby causing Thomas to bleed to death.

¶3. The next day, on March 21, 2000, Hodge's brother, Maurice, and Larry Mosby informed Chief Louis Johnson of the Edwards Police Department that they had discovered a body in the field. Hodge had told his brother that he had shot Thomas. Chief Johnson informed the Hinds County Sheriff's Department which began its investigation shortly thereafter. Chief Johnson and other officers then traveled to Hodge's residence and met him as he drove up to the house. Hodge then told Chief Johnson he heard that the police were looking for him. Hodge was arrested at that time.

¶4. After the arrest, Hodge was asked about the weapon that was used to kill Thomas. He indicated that he would take authorities to where it was hidden. About 200 to 300 yards from where Hodge was arrested the police found a Lorcin .380 under a recliner in a wooded area. Ballistics testing concluded that the projectile removed from Thomas and the three casings found on the scene came from the .380 Lorcin handgun to which Hodge led authorities.

¶5. That same day Hodge gave and signed a voluntary confession. In pertinent part, the statement contained the following exchange between Steve Bailey, a Hinds County investigator, and Hodge:

Q: When you went over in the pasture did you have your gun with you?

A: Yes sir.

Q: What kind of gun is it?

A: A .380.

Q: What happened once you got over in the pasture?

A: We were talking.

Q: Who was talking?

A: All of us, all of us was conversating [sic] and then all of a sudden we went to this little old lake like a little pond so we went up there so by the time Anthony turned his back that's when I had shot him.

Q: So you shot him in the back?

A: Yes sir.

Q: So you shot him in the back?

A: Yes sir. I think.

Q: Did you shoot him more than once?

A: Well yeah, I think. I don't know I just shot. I know for sure I shot once.

Q: If Archie says he heard three shots?

A: Yeah, I heard three shots, I shot three times.

Q: But you don't know how many times you hit him?

A: Yeah, yes sir.

Q: What happened after the shooting?

A: Well I went to the house and throwed [sic] my gun away and stayed at the house the rest of the day.

Q: What did Archie do?

A: He went home.

Q: Did Archie ask you after the shooting why you did it? Do you remember that?

A: Yes sir.

Q: What did you tell him?

A: Well I told him like this here the man said he was snitching. I felt like he was snitching.

Q: So that's why?

A: And then plus we had some words, he started talking crazy to us.

Bailey testified that Hodge told him that he was mad at Thomas for telling Chief Johnson about a burglary, so he convinced Thomas "to go out to this field outside of Edwards on the pretense of shooting at some cows or shoot some cows and that when he got out there, he shot him in the back and shot him a couple more times after he laid on the ground."

¶6. A jury found Hodge guilty of murder and sentenced him to life imprisonment.

## DISCUSSION

### I. WHETHER THE COURT ERRED BY EXCLUDING EVIDENCE OF THE ALLEGED VICTIM'S TATTOOS.

¶7. In order to maintain a defense of self-defense, Hodge attempted to introduce evidence of a tattoo stating "Gang$ta" found on Thomas's arm. Hodge contends that this evidence shed light on Thomas's propensity for violence under Miss. R. Evid. 404(a)(2) and 405 in that Thomas was the aggressor. Hodge attempted to introduce evidence of the tattoo via the testimony of Dr. Haynes and crime scene investigator Ken Magee and by an autopsy photograph of Thomas's arm. The trial court denied admission on the basis that evidence of the tattoo was irrelevant.

¶8. We review a trial court's ruling on the relevance and admissibility of evidence for abuse of discretion. *Simmons v. State*, 805 So. 2d 452, 487-88 (Miss. 2001) (citing *Burns v. State*, 729 So. 2d 203, 218 (Miss. 1998)). In this case, the trial judge properly denied admission of evidence of Thomas's tattoo.

¶9. Under Miss. R. Evid. 404(a)(2), a defendant can offer "[e]vidence of a pertinent trait of character of the

victim of the crime . . . that the victim was the first aggressor." However, in order to introduce that evidence, a defendant must introduce evidence of an *overt act* of aggression by the victim. Miss. R. Evid. 404 (a) cmt.; ***Robinson v. State***, 566 So. 2d 1240, 1241 (Miss. 1990). *See* Victoria C. Ferreira, Mississippi Evidence 64 (4th ed. 2001); Steven J. Allen, *Evidence, in* 4 Jeffrey Jackson & Mary E. Miller, Encyclopedia of Mississippi Law § 34:63, at 514 (2001). In the instant case, Hodge offered no evidence of an overt act of violence by Thomas. The only evidence proffered which would even give any indication of such a disposition was the "Gang$ta" tattoo on the premise that Thomas was a member of a gang and that gangs have a propensity for violence. Hodge also elicited testimony from Chief Johnson that he removed a handgun from Thomas on a prior occasion. Therefore, in the absence of any evidence of an overt act of violence by Thomas, therefore, pursuant to ***Robinson***, evidence of the tattoo was inadmissible. This assignment of error is without merit.

## II. WHETHER CORPUS DELICTI WAS ESTABLISHED SUFFICIENTLY AS TO THE VICTIM'S IDENTIFICATION TO SUPPORT THE CONVICTION.

¶10. Hodge next asserts that the corpus delicti was not established because no one at trial identified the body found in the field. The testimony elicited at trial concerning the identity of the body was that of Dr. Haynes who identified the body as that of Thomas based on information from an "officer of authority, the county coroner medical examiner investigator of Hinds County." Hodge contends that the identification of the victim was inadequate.

¶11. To establish the corpus delicti in a homicide case, there must be proof of (1) death of a human being and (2) a criminal agency causing that death. ***Nelson v. State***, 722 So. 2d 656, 660 (Miss. 1998) (citing ***May v. State***, 524 So.2d 957, 966 (Miss. 1988)). In the instant case there was undoubtedly the death of a human being. The second element was also satisfied by Dr. Haynes's testimony that Thomas was shot in the back and in the back of the head and that Thomas bled to death. Dr. Haynes's testimony satisfies the second element based upon ***Caldwell v. State***, 347 So. 2d 1389, 1390 (Miss. 1977), in which we held that evidence of trajectory and path of a bullet "causes us to conclude that the evidence and reasonable inferences which the jury was justified in drawing from the testimony sufficiently establishes criminal agency." Furthermore, Hodge's confession also establishes corpus delicti. ***Pinter v. State***, 203 Miss. 344, 348, 34 So. 2d 723, 724 (1948) (holding that confession together with dismembered relics of the identified body established the corpus delicti). This assignment of error is likewise without merit.

## III. WHETHER THE VERDICT OF GUILTY IS SUPPORTED SUFFICIENTLY BY THE DEFENDANT'S CONFESSION ALONE.

¶12. Contrary to Hodge's contentions, the guilty verdict rendered by the jury was not supported solely by his confession. We are mindful that a defendant's confession that is not corroborated by independent evidence of the corpus delicti is insufficient to support a felony conviction. ***Cotton v. State***, 675 So. 2d 308, 314 (Miss. 1996); ***Bullock v. State***, 447 So. 2d 1284, 1286 (Miss. 1984); ***Steward v. State***, 32 So. 2d 791, 791 (Miss. 1947); ***Pope v. State***, 158 Miss. 794, 131 So. 264, 265 (1930). However, other evidence adduced at trial supports the guilty verdict.

¶13. First of all, Hodge led authorities to the location of a .380 Lorcin when asked "for the weapon that was used to murder Anthony Thomas." Dr. Haynes removed a large caliber copper jacketed bullet from Thomas's body that was later matched by firearms examiner Starks Hathcock to the very .380 Lorcin to which Hodge led authorities. Hathcock also testified that the three shell casings found at the scene were

fired from the .380 Lorcin. This evidence when combined with Hodge's confession sufficiently establishes the corpus delicti and justifies the jury's guilty verdict. Hodge's assignment of error is without merit.

## IV. WHETHER THE VERDICT OF GUILTY OF MURDER, AS OPPOSED TO MANSLAUGHTER, IS SUPPORTED BY THE EVIDENCE.

¶14. Hodge finally contends that the only conviction that could be supported by the evidence would be for manslaughter. "Murder" is defined as "[t]he killing of a human being without the authority of law by any means or in any manner . . . (1)(a) When done with deliberate design to effect the death of the person killed, or of any human being . . . ." Miss. Code Ann. § 97-3-19 (2000). "Manslaughter" is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense . . . ." Miss. Code Ann. § 97-3-35 (2000).

¶15. In the instant case, there was sufficient evidence of Hodge's premeditation and malice. Hodge believed that Thomas was a "snitch" so he lured Thomas to the field under the pretense of shooting some cows. Hodge then shot Thomas in the back. Hodge produced no evidence of "heat of passion" or provocation as required for manslaughter. The fact that Hodge armed himself with a deadly weapon when he took Thomas to the field allows for an inference of malice. *Stokes v. State*, 240 Miss. 453, 128 So. 2d 341, 351 (1961) ; *Smith v. State*, 205 Miss. 283, 38 So. 2d 725, 726 (1949); *Busby v. State*, 177 Miss. 68, 170 So. 140, 143 (1936).

¶16. Whether a homicide is classified as a murder or manslaughter is ordinarily an inquiry to be made by the jury. *Jackson v. State*, 740 So. 2d 832, 840 (Miss. 1999); *Stevenson v. State*, 733 So. 2d 177, 186 (Miss. 1998); *Strahan v. State*, 729 So. 2d 800, 806 (Miss. 1998); *Johnson v. State*, 340 So. 2d 738, 740 (Miss. 1976); *Kinkead v. State*, 190 So. 2d 838, 840 (Miss. 1966); *McNair v. State*, 223 Miss. 83, 77 So. 2d 306, 308 (1955). In the instant case, the jury was instructed on both manslaughter and murder. It concluded that Hodge committed murder. This conclusion is justified given the fact that Hodge felt that Thomas was a "snitch" and lured him to the field under the pretense of shooting some cows and then shot Thomas in the back. We agree with the jury that the evidence supported a conviction for murder.

## CONCLUSION

¶17. We find that no reversible error was committed by the trial court and that the evidence supports the verdict of guilty. We therefore affirm the trial court's judgment.

¶18. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**